## INHABITANTS OF GREENFIELD *vs.* INHABITANTS OF CAMDEN.

### Penobscot.    Opinion June 30, 1882.

*Paupers.    Settlement.    Evidence.    Presumption.*

In settlement cases, evidence of the declarations of a deceased person is admissible to show when, but not where, such person was born.

The recital in an ancient deed that the grantor was of a certain place, is competent evidence of his residence in such place at the date of the deed. It is an act done *ante litem motam*, a part of the *res gestœ*, the actors in which are dead.

In a pauper suit, the ancient books of records belonging to a town which is a party to the litigation, reciting facts bearing upon the residence of the pauper's ancestor in such town, although the books are not kept with technical accuracy, are competent evidence of the facts recited; they are a part of the *res gestœ*, and partake of the character of declarations made by the town.

Where it is shown that a person was residing at a certain place at a certain time, the ordinary presumption is that such residence was a continuing residence. For what period of time such presumption would last must depend upon all the associated circumstances.

The fact that a pauper's ancestor lived and had his home upon the territory of a town upon the day of its incorporation, thereby acquiring his settlement in such town, may be shown by circumstantial and presumptive evidence.

The town of Camden was incorporated on February 17, 1791. John Gordon, Junior, in a deed of October 12, 1786, describes himself as residing in the place afterwards incorporated. On April 15, 1791, the selectmen of Camden laid out a road "to John Gordon, Junior's house," and the town accepted it.. It appears from the town records and registry of deeds, that, for many years continuously after 1791, he was residing in Camden, dealing to some extent in real estate, and taxed for a considerable real and personal estate between 1801 and 1813, no lists of assessments or valuation being found of a date prior to 1801, and that at times during this period he held a minor office in town, and in other respects performed acts that were to some extent indicative of citizenship. Aged witnesses remember him as living in Camden as long ago as their memories serve them, which would be somewhere at the beginning of the present century; and such persons do not remember, and there is nothing in the case to indicate, that he resided in any other place prior to 1813. *Held*, That these facts are *prima facie* proof that John Gordon, Junior, resided in Camden on the day of its incorporation, February 17, 1791. *Held*, also, That the presumption from such facts is that he was a citizen and not an alien. *Held*, further, that inasmuch as

the town was incorporated from a plantation, all citizens residing within its limits on the day of its incorporation were made inhabitants with privileges alike and had a legal settlement therein.

ON REPORT.

Assumpsit to recover expenses incurred by plaintiffs for the support of paupers, David Gordon, his wife and minor children, from November 10, 1874, to the date of the writ, December 10, 1875. Plea, general issue.

For the purposes of the trial it was admitted that the articles furnished to the amount of one hundred forty-three dollars and fifty-four cents, were needed, and were furnished and received, as pauper supplies; and that there was seasonable notice and denial.

The material facts shown in the report are stated in the opinion. If upon so much of the evidence as the law court deemed competent and admissible, John Gordon, David's father, acquired a settlement in Camden, and the action was otherwise maintainable, the case was to stand for trial; if not it was to be entered nonsuit.

*Sewall and Blanchard*, for the plaintiffs, cited: 29 Maine, 333; 36 Maine, 448; *Kenady* v. *Doyle*, 10 Allen, 164; 2 Greenl. Ev. § § 461, 462; 9 Mass. 414; 4 Campbell, 401; *Hingham* v. *Scituate*, 7 Gray, 231; *Adams* v. *Ipswich*, 116 Mass. 570; *Bath* v. *Bowdoin*, 4 Mass. 453; *Buckfield* v. *Gorham*, 6 Mass. 445; *Sutton* v. *Orange*, 6 Met. 484; *Fayette* v. *Hebron*, 21 Maine, 266; 1 Greenl. Ev. § § 104, 106, 485, 555, 503, 144, 570, 142, 571; *Hammatt* v. *Emerson*, 27 Maine, 335; Rev. Stat. U. S. c. 17, § 882; 1 Whar. Ev. § § 114 (note 2), 640, 642, 643; *Oldtown* v. *Shapleigh*, 33 Maine, 280; 1 Cush. 436; 4 Mason, 268; 13 Pick. 523; 8 Pick. 476; 105 Mass. 519; 10 Pick. 98; 36 Maine, 428; 6 Allen, 508; *Calais* v. *Marshfield*, 30 Maine, 519; 6 Pickering, 158; *Boston* v. *Weymouth*, 4 Cush. 538; *Pelham* v. *Middleboro'*, 4 Gray, 57; *Freeport* v. *Sidney*, 21 Maine, 305; 4 Mass. 545; 7 Mass. 381; 2 Maine, 28; 25 Maine, 468; 53 Maine, 228; *Charlestown* v. *Acworth*, 1 N. H. 62; 3 Wash. Real Prop. § § 50, 306, 307; *Russell* v.

*Coffin,* 8 Pick. 143 ; *Randolph* v. *Norton,* 16 Gray, 395 ; 107
Mass. 598 ; *Conway* v. *Ashfield,* 110 Mass. 113 ; *Westbrook* v.
*Gorham,* 15 Mass. 160 ; *Attleboro'* v. *Middleboro',* 10 Pickering,
377.

*A. P. Gould,* for the defendants.

There is no evidence that John Gordon, Junior, was an in-
habitant of the plantation of Camden, at the date of the act of
incorporation, February 17, 1791.

By the act of 1767, no person could become an inhabitant of
any town without the consent of its inhabitants expressed by a
vote at a regular town meeting. Ancient Charters, 663, 664.
This was repealed by the act of June 23, 1789, which provided
that a person could become an inhabitant by two years' residence
therein without being warned to depart. 2 Laws of Mass. c. 14,
§ 1. This was extended to three years, by the act of 1790,
chapter 30.

Now there is no evidence that Gordon obtained permission to
become an inhabitant of the plantation under the first act, and
there had not been sufficient time (two years, or three years,)
for him to become an inhabitant under the other acts. And the
act of incorporation embraced only the "inhabitants" of the
plantation.

In suits of this kind between towns there are no equities, and
the statutes are construed with great strictness. *Springfield* v.
*Enfield,* 30 N. H. 71 ; *Monson* v. *Chester,* 22 Pick. 385.

If Gordon acquired a legal settlement in Camden, it must
have been under the act of 1794, the twelfth mode, which pro-
vided "a person being a citizen" twenty-one years of age, resid-
ing in a town ten years, and paying all taxes for five years,
should gain a settlement.

It is therefore incumbent on the plaintiff to show that Gordon
was a citizen. *Cummington* v. *Springfield,* 2 Pick. 394 ; *Mon-
son* v. *Chester,* 22 Pick. 385.

As to the evidence of citizenship, see : 3 Laws, Massachusetts,
Appendix, c. 71 ; 2 Kent's Com. 39, 40, 41 ; the Pension Act,
3 U. S Stat. at Large, c. 19, p. 410. Notice the difference in

the acts of 1828. 4 U. S. Stat at Large, c. 53, p. 269; and 1832, *Idem*, c. 126, p. 529. See also, *Jackson* v. *White*, 20 Johnson, 313, 323; *Ingliss* v. *The Sailors' Snug Harbor*, 3 Peters, 99, 166.

The statement in the deed at the most shows only that Gordon was living in Lincoln county, but does not prove his status there as to citizenship. A man may have two places of residence but only one domicile, and on that question the declaration of a person in so solemn an instrument as a will, proves but little. *Gilman* v. *Gilman*, 52 Maine, 175; *Whicker* v. *Hume*, 5 Eng. L. and E. 52. The cases where the written declarations of a person have been admitted to show his residence under the pauper laws, have no application to this question.

It must be shown that John Gordon, Junior, resided in Camden "for the space of ten years together," commencing after he was twenty-one years of age. And the plaintiffs must show when the ten years commenced. This cannot be done by hearsay evidence. *Wilmington* v. *Burlington*, 4 Pick. 174; *Braintree* v. *Hingham*, 1 Pick. 245; *King* v. *Erith*, 8 East. 538; *King* v. *Chadderton*, 2 East. 27; *King* v. *Ferry Frystone*, 2 East. 54; *Southampton* v. *Fowler*, 54 N. H. 197; *Union* v. *Plainfield*, 39 Conn. 563; *Mima Queen* v. *Hepburn*, 7 Cranch, 290. The statutes mean ten consecutive years. *Billerica* v. *Chelmsford*, 10 Mass. 394. Declarations in deeds only show that on the day of the date the grantor lived in the place named; they do not show such a residence as is required by the pauper laws, — an inhabitancy *animo manendi*. *Turner* v. *Buckfield*, 3 Maine, 229; *Jefferson* v. *Washington*, 19 Maine, 293; *Warren* v. *Thomaston*, 43 Maine, 406. At the most "this evidence is merely presumptive." *Ward* v. *Oxford*, 8 Pick. 477. And that is to base a presumption upon a presumption, which is too far fetched for logical deduction. Proof that a pauper had a residence in a certain town upon a particular day, does not create the presumption of continuance. *Kirkland* v. *Bradford*, 30 Maine, 452. It has sometimes been said that when a home has been once fixed, it continues until it is actually changed. *Brewer* v. *Linnæus*, 36 Maine, 428; *Chicopee* v. *Whately*, 6 Allen, 508.

This cannot be correct. If it were so, to make out a legal settlement by five years' residence, it would only be necessary to show that a residence was once acquired and that five years have since elapsed.

It must appear that Gordon was legally assessed and actually paid taxes for five years. *Reading* v. *Tewksbury*, 2 Pick. 534; *East Sudbury* v. *Sudbury*, 12 Pick. 1; *Berlin* v. *Bolton*, 10 Met. 115; *Shrewsbury* v. *Salem*, 19 Pick. 389; *Robbins* v. *Townsend*, 20 Pick. 345. The paper books offered by the plaintiffs, purporting to be signed by certain persons as assessors of Camden, are not legal evidence. They are not the evidence of the assessment required by the statute. 1 Laws of Mass. 275; *Wakefield* v. *Alton*, 3 N. H. 378. No legal assessors were elected, or tax voted. The constable's return on the warrant for the town meetings for the years from 1809 to 1813, says, "pursuant to the within warrant, I have notified the within inhabitants of said town, qualified as therein expressed to meet at the time and place and for the purposes therein mentioned." *Tuttle* v. *Cary*, 7 Maine, 426; *Fossett* v. *Bearce*, 29 Maine, 523; *Bearce* v. *Fossett*, 34 Maine, 575; *Chapman* v. *Limerick*, 56 Maine, 390; *Allen* v. *Archer*, 49 Maine, 346; *Brunswick* v. *McKeen*, 4 Maine, 508. It must be proved affirmatively that Gordon paid the taxes, payment is not to be presumed even if a legal tax was assessed. *Dana* v. *Petersham*, 107 Mass. 598; *Attleboro'* v. *Middleboro'*, 10 Pick. 378; *Shrewsbury* v. *Salem*, 19 Pick. 389; *Robbins* v. *Townsend*, 20 Pick. 345; *Berlin* v. *Bolton*, 10 Met. 118.

Gordon was once elected a hogreeve. The law required that " two or more persons for hogreeves shall be chosen." 2 Laws of Mass. c. 56, § 1. Thus any person, any man or woman, citizen or not, resident or non-resident could be chosen to that office. Dillon Mun. Corp. § 134; *State* v. *Blanchard*, 6 La. Ann. 554.

PETERS, J. This action is to recover for supplies furnished to David Gordon, wife and minor children, paupers in the town of Greenfield. The facts disclose that David is the son of John Gordon, Junior, whose father was John Gordon, Senior, and that David had a brother first known as John Gordon, Third, and

that all of them lived in the early part of the present century in the town of Camden. John Gordon died and was buried in Camden "a few years before the war of 1812." John Gordon, Junior, died in Greenfield in about the year 1850. John Gordon, Third, died during service in the war of 1812. David lives in Greenfield.

The case does not disclose that David has any settlement in the state, unless he takes derivatively the settlement of his father, which the plaintiffs contend the father obtained by being an inhabitant of Camden when that town was incorporated on February 17, 1791. Upon this hinge, in our view of the facts, the case turns.

Bearing upon this question the following facts, objected to by the defendants, are relied upon by the plaintiffs: First, papers upon which John Gordon, Junior, obtained a revolutionary pension, being his own sworn declaration, and the accompanying affidavits of two other persons many years deceased, to the effect that he was born in New Hampshire in 1764, and lived in Camden from his early youth until he removed therefrom in about the year 1813. However much weight these papers may have morally, they are not legally admissible. As to strangers, they are hearsay merely, and do not, in the main facts sworn to, come under any of the exceptions which make hearsay admissible. The only admissible fact contained therein is the declaration of the pensioner that he was born in 1764. The law receives his statement of the date of birth, but many authorities refuse to receive such evidence of the place of birth, in settlement cases. 1 Green. Ev. § § 125, 555; 1 Whar. Ev. § § 208, 821; *Wilmington* v. *Burlington*, 4 Pick. 174; *Hall* v. *Mayo*, 97 Mass. 416; *Adams* v. *Swansea*, 116 Mass. 591.

The next item of evidence presented is the copy of a deed from the registry of Lincoln county, dated October 12, 1786, in which John Gordon, Junior, deeded to Peter Ott land in Camden, in which deed the grantor is described as " of a place called Camden in Lincoln county." There can be no mistake that John Gordon, Junior, was the father and not the grandfather of David, inasmuch as the distinction is well kept up between the two names,

as evidenced by subsequent conveyances and by various allusions to the two persons in subsequent records of the town.   The testimony of several aged persons who are called as witnesses confirms the fact.   The recital of John Gordon, Junior's, residence in this deed is competent evidence tending to show that fact.   It is an act done *ante litem motam*, a part of the *res gestœ*, the actors in which are not now supposed to be living.   *Oldtown* v. *Shapleigh*, 33 Maine, 278 ; *Ward* v. *Oxford*, 8 Pick. 476.

The next item in the chain of proof is found in the records of the town clerk of Camden for 1791 and succeeding years.   It is needless to argue that the town records are competent proof of the matters found therein.   No matter whether they were kept with technical accuracy or not.   They pertain to the *res gestœ*, are the acts of the town, and are ancient historical records. These records disclose that on April 15, 1791, the selectmen laid out a road, describing it as running, among other boundaries, "by John Gordon's lot," and "to John Gordon, Junior's, *house*."   On the same day a road was laid out "from Clam Cove to John Gordon, Junior's."   In the same year there was an article in the town meeting warrant, "to see if the town would accept a road laid out from Mr. Ott's to John Gordon, Junior's" ; and the town voted to accept "a road laid out from Clam Cove to John Gordon, Junior's," and "not to accept a road laid out from Peter Ott's to John Gordon, Junior's."   In 1791 there also appears a record of a road "leading to a road that leads to John Gordon, Junior's," and the town in that year "accepts the road which comes into the road that leads from Clam Cove to John Gordon, Junior's."   In December, 1791, John Gordon (Senior,) of Camden, conveys land to William Thompson.

The town clerk's records and registry of deeds show the following facts : That "John Gordon, Junior, of Camden," on June 2, 1792, conveyed land to E. Gay ; that on April 4, 1793, "John Gordon, Junior, of Camden," conveyed land to W. Hewitt ; that, on April 1, 1793, the town accepted a road, running in one of its boundaries "to John Gordon, Junior's, fence ;" that in the same year, John Gordon and John Gordon, Junior, were the first two signers of a petition for the call of a town meeting ; that in 1794,

the selectmen make return of a road, "to the road that leads from Clam Cove to John Gordon, Junior's; that, on January 8, 1795, "John Gordon, Junior, of Camden," conveyed land to Robeson; that, on June 18, 1795, William Thompson conveyed land in Camden "to John Gordon, Junior, of Camden;" that, on April 23, 1798, Joseph Pierce conveyed land in Camden "to John Gordon, Junior, of Camden, ;" that, on October 30, 1800, "John Gordon, of Camden," conveyed land to E. G. Dodge, signing and acknowledging the deed as "John Gordon, Junior," and Mary the wife of John, Junior, joins in the deed to relinquish dower, while the wife of the father was not Mary but Jane Gordon; that, in 1806, John Gordon, Junior, was accepted by the town as a bondsman of a town collector; that, in 1807, land in Camden was conveyed to and also by "John Gordon, Junior, of Camden;" and that in the years 1808 and 1809, "John Gordon, Junior, was chosen hogreeve."

All the assessment and valuation lists of the town that can be found, up to the year 1813 inclusive, comprising the years 1801, 1804, 1805, 1806, 1807, 1808, 1809, 1811, 1812 and 1813, contain the names of John Gordon and John Gordon, Junior; and John Gordon, Junior, was constantly taxed as the possessor of a considerable real estate, and as a resident of the town. We think the tax exhibits sustain the position taken by the plaintiffs' counsel, that after 1808, the probable date of the death of John Gordon, Gordon, Junior, was taxed by the name of Gordon, Senior, and Gordon, Third, as Gordon, Junior. A glance at the lists shows it.

Then comes the question, do all of these facts combined prove, *prima facie*, that John Gordon, Junior, had his residence in Camden, on February 17, 1791? We think such a *prima facie* case is made out.

By the deed of October 17, 1786, John Gordon, Junior, declares that he was of Camden at that date. That meant more than that he was bodily there. We think it meant that he was residing and dwelling there. Those were days when a man was not apt to have different residences, or a domicile in one place and a residence in another. Best, in his work on evidence, says

that the place where a person lives must be taken, *prima facie*, to be his domicile. 2 Best Ev. *535. No doubt, such a declaration in a deed would amount under many circumstances to but slight evidence. But its importance here arises somewhat from the fact that probably not the slightest other legal evidence can ever be adduced in relation to the whereabouts or residence of the grantor at that time. Its importance is increased from the fact that it is not inconsistent with any other known event. And it is to be weighed with the further fact that the father of the grantor lived and died in Camden, and we have no information that he ever lived anywhere else.

Now what inference or presumption should be drawn from this statement in the deed? The plaintiffs claim that the presumption is, *prima facie*, that Gordon lived in Camden so long as the contrary does not appear. This position is resisted by the defendants, who say it cannot be possible that a continuous residence of five years can be inferred from the proof of one day's residence at the beginning of the five years. Some authorities seem to support the plaintiffs' proposition. But it may be difficult to lay down any general rule upon the question. Each case must stand upon its own circumstances. We have no doubt that the presumption of continuance applies to residence as to many other conditions in life, and that we should assume that Gordon's residence in Camden in 1786 was a continuing residence. The presumption is one of fact, or perhaps a mixed presumption, that is, a presumption of fact recognized by the law. And for how long any man's residence should be presumed to continue unchanged, must depend upon the circumstances and the judgment of the tribunal which is to draw a deduction from the circumstances. The less the opportunity to obtain evidence of actual continuance of residence, the stronger may the presumption be.

In 2 Whar. Ev. § 1285, it is said: "We may hold, as a presumption of fact, more or less strong according to the concrete case, that a party is presumed to continue to reside in the last place known to have been accepted by him as such residence. The same inference is applicable to the settlement of a pauper,

and to domicile." The same author says in the same volume, §
1284, under the head of "presumptions of uniformity and contin-
uance:" "We are therefore to understand that the presumption
of continuance is simply a presumption of fact, whose main
use is in designating the party on whom lies the burden of
proof. In this sense we are justified in holding that the
continuance of an existing condition is a presumption of *fact*,
dependent for its intensity on the circumstances of the par-
ticular case. But the question is one dependent upon the
relation of conditions to time. In fact, so far from continuance
being a *legal* presumption, in things dependent upon human
purposes, the presumption, in the long run, is the other way.
"Man never continueth in one stay." In Wood's edition of Best
on Evidence, 2 vol. § 405, in note, the American editor says :
"When a man's residence is once shown to have been in a place,
it will be presumed to continue there until the contrary is proved.
But presumptions of the continuance of a given state of things
only exists in reference to such matters as are of a continuous
nature. That is, such a state of things as would be likely to
continue, unless interrupted by other causes outside of the
relations themselves. The fact that a person is seen on the
street to-day does not warrant the presumption that he will remain
there forever, or even five minutes ; but if a person is shown to
be in the employment of a person to-day, he will be presumed to
remain in that person's employment until the contrary is shown."

But we have no occasion to determine what the effect of the
recital in the deed might be standing alone. We are called upon
to pronounce· what its force and effect shall be when taken in
connection with other important facts which are a part of the
evidence. It appears that Gordon, Junior, was in Camden in
April, 1791, less than two months after the incorporation of the
town, and for many years continuously afterwards, dealing in
real estate, owning considerable real and personal estate, and
taxed therefor. And it appears in several ways that during this
period of time he was acting the part of a considerably important

citizen. It is evident enough that on April 15, 1791, he was the occupier if not the owner of a house. This fact throws much light upon the question of previous locality and condition. If we find a man living in a house to-day, we may very well infer that he was there yesterday, and there may be a presumption that he was there for days or weeks or months before that time. All would depend upon the surrounding circumstances.

The two conditions, a residence before February, 1791, and a residence so soon afterwards, when taken in co-operation, bear with great force upon the position that there was an intermediate and continuous residence. The maxim, *probatis extremis, præsumuntur media*, applies. The probability that there could have been no change is geometrically stronger. Added to this is the fact of a residence in the same town for two decades and more after 1791, and there is nothing to indicate a residence in any place out of the town till the removal in about 1813.

It certainly cannot be necessary to prove in any manner other than by circumstantial and presumptive evidence that he lived in the defendant town on the day of its incorporation. Any fact may be proved by indirect or circumstantial evidence. It could hardly be pretended that, if there were no question that a man was residing in a house of his own on the day before and on the day after a given day, he would be presumed to have been residing there on the intermediate day, if nothing exists to indicate the contrary. And it cannot be a breach of good reasoning to infer the same thing, where the gap to be supplied is a wider one, if the evidence is strong enough to justify it. Nor is a contrary doctrine upheld in *Kirkland* v. *Bradford*, 30 Maine, 452. The head-note in that case misrepresents the facts, as presented by the reporter.

The defendants further contend that, even if John Gordon, Junior, dwelt and had his residence in Camden on the day of its incorporation, he was not a legal inhabitant at the time. But this point is plainly overruled by the decisions in Maine and Massachusetts. The territory being a township or plantation merely, all citizens thereon were made thereby inhabitants with

privileges alike. *Fayette* v. *Hebron*, 21 Maine, 266, and cases there cited.

The defendants contend that it does not appear that Gordon, Junior, was a citizen even. The facts related in this opinion, which are admissible in evidence, are sufficient to show that he was. *Cummington* v. *Springfield*, 1 Pick. 394.

*Action to stand for trial.*

APPLETON, C. J., BARROWS, DANFORTH, VIRGIN and SYMONDS,, JJ., concurred.