Merwin *v.* Morris et al.

———————

CALEB T. MERWIN *vs.* ANDREW B. MORRIS ET AL.

Third Judicial District, New Haven, Jan. Term, 1899. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

It cannot be said, as matter of law, that less evidence is necessary to prove adverse possession when the entry is made with color of title, than when made without it; that depends upon the circumstances of the case and the nature of the alleged title, which are matters to be weighed and determined by the jury.

The question whether certain deeds and other written instruments, comprising all the evidence, establish the record title in one of the parties, is a question of law for the court, provided the identity of the land therein described with the land in controversy is conceded.

Certain portions of the charge of the court relating to the nature of adverse possession, reviewed, and *held* to constitute a full and correct presentation of the law as applicable to the evidence and claims of the parties.

A mere paper chain of title in the plaintiff does not establish his ownership of the land, unless his possession or that of his grantors is

Merwin *v.* Morris et al.

shown. But evidence of actual possession is unnecessary if the jury is satisfied, by documentary or other evidence, including admissions of plaintiff's title in deeds through which defendant claims, of owner-ship by the plaintiff's predecessors in title; since the title thus es-tablished draws with it the possession, in the absence of any evi-dence of ouster.

Where adjoining proprietors each claim title by deed to the *locus in quo*, and the real controversy is one of boundary, statements in the deeds under which they respectively claim, as to the dividing line, are ad-missible in evidence, whether such statements be called admissions, declarations, or acts of ownership. Such documentary evidence may also establish facts which are competent to prove the owner-ship of the land.

The possession involved in the fact of ownership is sufficient to main-tain an action in the nature of trespass *qu. cl. fr.*, if at the time of the injuries complained of the land was not in the actual, exclusive occupation of another.

Under § 2966 of the General Statutes, the ouster of the grantor which will render his deed void must be of the same character as that re-quired to establish adverse possession.

The trial judge instructed the jury that the adverse possession relied upon by the defendants must have continued for fifteen years prior to a certain time, which was four months earlier than the correct date. *Held* that inasmuch as the defendants claimed to have been in adverse possession for over twenty-seven years, this error was immaterial and harmless.

As relevant to the claim of adverse possession, the trial court admitted evidence of the payment of taxes upon the *locus* by one of the de-fendants for five years, but excluded similar evidence for two other years. *Held* that while the exclusion of this evidence was erroneous, the error could not have injured the defendants, in view of the evi-dence received upon this subject and the importance attributed to it by the charge of the court.

Argued January 19th—decided March 9th, 1899.

ACTION in the nature of trespass *qu. cl. fr.*, brought origi-nally before a justice of the peace and thence by the defend-ants' appeal to the Court of Common Pleas for New Haven County, and tried to the jury before *Hubbard, J.;* verdict and judgment for the plaintiff, and appeal by the defendants for alleged errors in the rulings and charge of the court. *No error.*

The complaint alleged (1) that the plaintiff on June 25th, 1896, owned and was possessed of a certain piece of land de-scribed by its bounds; (2) that on said June 25th the defend-

ants unlawfully entered on said land and pulled up the posts of a fence, etc.  The answer contained a first defense, being a general denial, and a second defense, alleging that the defendants at the time of the acts complained of were owners in fee simple and in possession of the land described in the complaint.

The record shows the following facts : In 1773 there were two pieces of land in Milford adjoining each other, and both bounded in part on the shore of Long Island Sound.  One piece was known as " Phillips' Meadow," containing by recent measurement $2\frac{52}{100}$ acres ; the other piece was known as " the salt meadow lying in Round Meadow," containing by recent measurement $3\frac{46}{100}$ acres.

Phillips' Meadow is the land in question.  The plaintiff claims to own it, deriving his title from one Samuel Burwell, through a number of mesne conveyances.  The defendants own the lot in Round Meadow, deriving their title from one Jeremiah Platt through a number of mesne conveyances, and claim that the description of boundaries in the deed of one of their predecessors in title, in 1845, was such as to include " Phillips' Meadow " within the boundaries of " Round Meadow lot."

It was conceded on the trial that the defendants owned and were in possession of Round Meadow lot lying north of ·Phillips' Meadow ; and the respective tracts of land—that of the defendants and that claimed by the plaintiff—are shown by the following map prepared from the map which was made a part of the finding.

The conveyances, so far as significant, are as follows. As to the plaintiff's line: Samuel Burwell devised Phillips' Meadow to his son, Benedict Burwell, by will dated January 31st, 1777. June 24th, 1779, Benedict Burwell conveyed to his brother, Samuel Burwell, 2d "a piece of meadow given to me by my father, Samuel Burwell, deceased, called Phillips' Meadow, bounded north on Solomon Baldwin, west and south on the highway, and easterly on the beach." It was admitted that the land of Solomon Baldwin on the north is the land now owned by the defendants, and "Phillips' Meadow" is the land in dispute. By will dated June 13th, 1811, Samuel Burwell, 2d, devised "Phillips' Meadow" to his grandsons, Benedict Burwell and Robert Burwell. December 8th, 1817, Benedict and Robert Burwell conveyed Phillips' Meadow to Daniel Merwin bounded "north on Isaac Baldwin, and as described in former deeds." It was conceded that the land of Isaac Baldwin on the north is the land now owned by the defendants. November 27th, 1891, the heirs at law of Daniel Merwin conveyed Phillips' Meadow to Edwin M. Munger. February 25th, 1896, Edwin M. Munger conveyed Phillips' Meadow to the plaintiff.

As to defendant's line: December 27th, 1773, Jeremiah Platt conveyed to Solomon Baldwin a "piece of salt meadow lying in Round Meadow, containing two acres, be the same more or less, bounded north on meadow belonging to Nathan Borgan's heirs and his own meadow; east on the sea; south on Samuel Burwell's meadow; west on a two-rod highway." The land described as Samuel Burwell's meadow is the land claimed by the plaintiff. February 24th, 1819, Isaac S. Baldwin, who it is admitted had succeeded to the title of Solomon Baldwin, conveyed to Thomas Merwin "a certain piece of land lying at a place called Round Meadow, containing two acres and one half, more or less, bounded north part on Nathaniel Smith, Nathan Merwin, and grantor; east on beach; south on Samuel Burwell's heirs, and west on highway." This land of "Samuel Burwell's heirs" is the land now claimed by the plaintiff. June 20th, 1842, the administrator (Lewis Merwin) filed in the Court of Probate an inventory

of the estate of Thomas Merwin, deceased. The list of real estate contains eleven items, each describing a lot by name or designation, the number of acres, and the valuation. The only item relating to the land in controversy, is this: "Two acres and one half at Round Meadow @ $12, $30." September 26th, 1845, Lewis Merwin, administrator, under order of the Court of Probate, sold and conveyed for $18, to Nathaniel Smith (he being the highest bidder at public auction), a piece of land "at a place called Round Meadow, containing two acres, more or less, bounded easterly and southerly on the beach; westerly on the highway, and northerly on Smith's own land." Within a few weeks Smith conveyed the land, described in the same manner, to Lewis Merwin, individually. Four conveyances followed, each describing the land in the same way. The fourth is to John W. Fisher and is dated March 13th, 1869. November 25th, 1876, John W. Fisher conveyed to John M. Ames "two and one half acres at Round Meadow Hill, bounded" as before. March 9th, 1886, the administrators on the Ames estate conveyed to the defendants. (A number of intervening deeds caused by a tax levy need not be mentioned.)

These deeds, wills and inventory, were all duly recorded and proved. They constituted all the documentary evidence in the chain of the plaintiff's title and in the chain of the defendants' title.

It appeared in evidence and was admitted, that the land in controversy was a piece of meadow marsh and sea beach, unfitted for the raising of crops, a small portion being covered with bushes, and a small part, only, producing salt and marsh grasses sufficiently valuable for cutting.

The plaintiff offered evidence to prove and claimed to have proved, that upon receiving the deed from Munger, February 25th, 1896, he entered upon the land conveyed, caused the same to be surveyed and the map produced in evidence to be made; that at the time of such entry he found no other person in possession or occupation of the land; that the land was not enclosed, but that on the northerly boundary thereof, along the land of the defendants, there were remains of

Merwin v. Morris et al.

an old crooked rail fence, the location of which was evidenced from a line of fence bushes, and for a considerable distance by the stones upon which the rails of the original fence had rested. On this divisional line the plaintiff erected fence posts, the removal of which by the defendants on June 25th, 1896, constitute the injuries complained of.

The defendants claimed that the deed from Daniel Merwin's heirs to Munger and the deed from Munger to the plaintiff, were void under the statute, because, as they claimed, at the time such deeds were executed the grantors were ousted of possession.

The defendants in support of their plea of title, further claimed to be owners of the land in dispute by virtue of an adverse possession commencing in 1869 when the Round Meadow lot was conveyed to John W. Fisher. Upon the claims of ouster and adverse possession much conflicting testimony was offered. The defendants offered evidence of various acts by John W. Fisher during his ownership of the Round Meadow lot, by John M. Ames during his ownership, and by the defendants since 1886, and claimed that these acts established his title by adverse possession. But no evidence whatever was offered of any acts of ownership, dominion, possession or occupation, adverse to the title of the plaintiff or that of his grantors, from October 26th, 1881, being the date of the death of John M. Ames, to March 9th, 1886, when Round Meadow lot was conveyed to the defendants.

In rebuttal the plaintiff offered evidence of various acts by his grantor, Daniel Merwin, and by his grantor, Munger, and various acts by other parties, and claimed that these acts disproved any occupation of an uninterrupted and exclusive character by the defendants or their predecessors, and offered other evidence by which he claimed to have proved that the owners of the record title to the disputed land were never ousted or disseized.

· During the trial the defendants offered in evidence certain tax lists for the years 1888, 1889, 1890, 1891 and 1892. These lists were made out by the assessors of Milford, were not subscribed or sworn to by any person as the owner of the

property contained in such lists, and purported to be the tax list of " James Morrissey & Sons." Each list contained this item : " 1 acre 2 qrs. salt meadow (assessors' valuation) $15 ; " and also this item : " 2 acres Fisher land (assessors' valuation) $60." These lists were offered in support of the defendants' claim that they had paid the taxes for these years on the land in controversy; and the defendant Andrew B. Morris, claimed in his testimony that the item in said tax lists, " 2 acres Fisher land," referred to land lying north of the line of the old cross fence as shown on the map (being the dividing line between Round Meadow lot and Phillips' Meadow), and that the item " 1 acre 2 qrs. salt meadow," referred to a strip of salt marsh lying for the most part north of the line of said old fence, but extending to some extent southerly from said old fence into the tract of land claimed by the plaintiff. Against the objections of the plaintiff the court admitted each of these tax lists, together with the testimony of Andrew B. Morris as to the meaning of the two items mentioned, and that he had paid the taxes thereon. The defendants also offered the tax lists for the years 1887 and 1893, which were in all respects the same as those admitted, except that the one for 1887 purported to be in the name of James Morrisey," and the one for 1893 of the " estate of James Morrisey." On objection of the plaintiff the court excluded the lists for 1887 and 1893, and also the testimony of the defendant Andrew B. Morris that he had paid the taxes assessed upon those lists. The defendants duly excepted.

The defendants filed a number of written requests. So far as the refusal of the court to charge as requested is assigned for error, they are as follows : 1. A legal title in the plaintiff without possession is not sufficient to enable the plaintiff to maintain this action; and if the plaintiff, having the legal title, was disseized or dispossessed at the time of the alleged trespasses, he cannot maintain the action. 2. If, however, the plaintiff is found to have the legal title to the property, and it is also found that no one else has the actual and exclusive possession thereof, then the law infers that the holder of the legal title has also possession. But in an action of tres-

pass to land, like the present, the defendants, to entitle them to a verdict, must show either an actual or exclusive possession, or a title in connection with the fact that no one else was in the actual and exclusive possession. 3. If the jury finds that the plaintiff was not in the actual exclusive possession of the premises at the time of commission of the trespass, and that the defendants were in such possession, their verdict must be for the defendants. 4. The defendants deny the title of the plaintiff on two grounds: (*a*) They say that he purchased the premises of Munger, who bought of the heirs of Daniel Merwin, at the time when Munger was ousted of the premises, and that such purchase was void under § 2966 of the General Statutes. (*b*) That they have a superior title gained by exclusive adverse possession for more than fifteen years. 5. In conformity with § 2966, if the jury find that the defendants had entered upon and were in possession of the premises in question at the time Munger made his conveyance to the plaintiff, that deed must be held to be void, and the plaintiff cannot by reason of it establish a title. It is claimed that the plaintiff, after the conveyance of the premises to himself in 1896, took possession thereof before the acts of trespass happened. If the defendants were in possession and holding adversely, he might make entry upon the premises and oust the defendants, and so regain possession. But such acts must show that he has in fact retaken actual possession, and has excluded the defendants, otherwise they are of no avail to give him standing to bring this suit (quoting passages and citing cases). 6. The occupation necessary to establish adverse possession varies in each case, depending upon the situation and the nature of the property (quoting passages from text books and reports, and citing cases). 7. If the jury find that the land in question was not in the actual possession of either the plaintiff or defendants at the time of the alleged trespass, and if they find further that none of the parties in the plaintiff's chain of title has been in possession during the time which he held title, their verdict must be for the defendants. 8. No length of chain of paper title which does not reach the sovereignty of the soil, is sufficient of itself to

constitute *prima facie* evidence of title (quoting passages and citing cases). 9. For the purpose of establishing adverse possession, an entry with a color of title may be supported by less weight of evidence than a bare entry by an intruder and under no claim of right. The party who holds possession claiming under a deed, has what is called color of title if the deed does not convey the real title.

The appeal assigns error for refusal to charge as requested in each of the above requests; and assigns error in charging the jury as follows :—

"1. Upon all the deeds and documents in evidence respecting title, I charge you, gentlemen, that the legal title of record to the tract of land described in the complaint, being the tract in dispute, is in the plaintiff. 2. Adverse possession is not to be made out by inference, but by clear and positive proof. 3. The question then in this part of the case, gentlemen, for you, is whether the defendants and those under whom they claim, have for a period of fifteen years had actual, open and exclusive adverse occupancy and possession of the land claimed to be owned by the plaintiff, such adverse possession being known and acquiesced in by the real owner, or so far notorious as to be presumptively within his knowledge. 4. An occasional use of the land, such as the occasional cutting of grass or fire wood, will not be sufficient to establish adverse possession. 5. But neither physical occupation, cultivation, nor residence, is necessary to constitute actual adverse possession, when the property is so situated as not to admit of any permanent useful improvement, and the continued claim of the property has been evidenced by open, visible, continuous acts of ownership, known to and acquiesced in by the real owner, or so far notorious as to be presumed to be within his knowledge. 6. But if, as claimed by the plaintiff here, you shall find that the predecessors of these defendants in the chain of alleged title, have admitted the title to be in the predecessors, or any of them, and so you find the title established, then it is not necessary that it appear that any possession has been exercised on the part of the owner. 7. But the point is that the plaintiff contends that in certain deeds, or

deed, in the defendants' chain of title, the description of that Morris land is given with the boundary on the south being on the land in dispute. 8. Now I think it my duty to charge you, gentlemen, as a matter of law, that that amounts to an admission on the part of the grantor, or the grantors, so describing that land, that the title to the land, being the land here in dispute, is in the party so named in those deeds, or deed, as being on the south boundary of the so-called Morris land. 9. I am asked by the defendants' counsel to charge you in conformity with this statute, that if you find that the defendants had entered upon and held possession of the premises in question at the time Munger made his conveyance to the plaintiff, then the deed must be held to be void, and the plaintiff cannot by reason of it establish a title. That is so, gentlemen, with the qualification that by the language of the statute, as you will recollect, the dispossession must be by an ouster; and I say to you that to void the deed from Munger, the record-title owner, the ouster must be of the same character as that required to establish adverse possession. 10. I stated that an ouster must be of the same character. It must be an open, visible, exclusive possession that is to make an adverse possession. It need not continue for fifteen years, but the character of the ouster must be of the same character as in the case of adverse possession of fifteen years claiming to convey title, or amount to that. 11. If under the instructions given you, you shall find that the defendants have had such adverse possession of this disputed land, open, continuous and exclusive, for an unbroken period of fifteen years prior to the date of the plaintiff's deed to Munger, then the verdict should be for the defendants."

The defendants also assign error in excluding evidence as to the payment of taxes for the years 1887 and 1893.

*William L. Bennett* and *E. P. Arvine*, with whom was *George E. Beers*, for the appellants (defendants).

The court erred in charging the jury that the legal title of record to the land in dispute was in the plaintiff. It was not shown that either Samuel or Benedict Burwell had any title

to convey. In order to make the proof of title complete, it must be carried back to some person who is shown to have the right of property and not merely a claim to it. *Davis* v. *Kingsley*, 13 Conn. 285, 293. In the case of the *Fla. So. Ry. Co.* v. *Loring*, 51 Fed. Rep. 932, 2 U. S. App. 310, 314, the court says: "No length of chain of paper title which does not reach the sovereignty of the soil is sufficient of itself to constitute *prima facie* evidence of deeds. There must be in addition proof that satisfies the jury that at least one of the grantors in this chain of title had been in possession of the premises, where the chain does not reach back to the sovereignty, before the defendant in possession can be required to defend his possession." The plaintiff in ejectment must show "either that his grantor and those under whom he claims, had the title or the possession claiming title." *Dominy* v. *Miller*, 33 Barb. 386, 389; *Dubois* v. *Smith*, 20 Fla. 834, 838. To the same effect are *Smith* v. *Lawrence*, 12 Mich. 431; *Stevens* v. *Hauser*, 39 N. Y. 302, 304. There are three elements, or stages of title. First, possession; second, right of possession; and third, right of property. The grantors in the plaintiff's chain did not have possession, nor did they have right of possession, or right of property deduced from sovereignty, the only origin of title and the only authority which could convey anything without possession. The court also erred in the charge as to certain claimed admissions contained in deeds said to be in the defendants' chain of title, which the court told the jury were admissions of plaintiff's title, and were effective in establishing that title. Abbott, Trial Ev. 158; *Walker* v. *Dunspaugh*, 20 N. Y. 170, 173; *Porter* v. *Waite*, 55 Conn. 236. The court erred in excluding the evidence concerning the payment of the taxes upon the lists of 1887 and 1893. These lists were excluded because the assessors by mistake added to the name of one of the defendants, James Morris, the letters *ey.* Offer was made to prove the identity and the payment of the taxes. The evidence should have been admitted. *Wren* v. *Parker*, 57 Conn. 529.

Merwin *v.* Morris et al.

*James H Webb*, for the appellee (plaintiff).

No controversy arose concerning the meaning or application of any of the documentary evidence affecting either the title of the plaintiff or of the defendants. The legal effect, therefore, of the documents affecting the title, was a pure question of law for the court, and the court rightly charged upon that question. *Gibbs* v. *Gilead Eccl. Soc.*, 38 Conn. 153; *Jennings* v. *Sherwood*, 8 id. 127; *Wooster* v. *Butler*, 13 id. 318; *Auffmordt* v. *Stevens*, 46 id. 411; *Court Harmony* v. *Court Lincoln*, 70 id. 634; *Jordan, Marsh & Co.* v. *Patterson*, 67 id. 473. The tax lists for 1887 and 1893 were rightly excluded. It is difficult to see how any of the tax lists tended in any manner to prove that the defendants had paid the taxes on the land in dispute. The defendants were certainly incompetent to testify as to whom the assessors, in fact, intended to assess. Only the assessors themselves were competent to say who was in fact intended. But irrespective of this it is difficult to see how the defendants were prejudiced by their exclusion. The whole charge, upon the question of adverse possession, was a clear and accurate statement of law. *Huntington* v. *Whaley*, 29 Conn. 391. Even if it be so, that a defendant in possession cannot be required to defend his possession until confronted with a chain of title going back to the sovereignty, it is of no consequence in this case. The verdict of the jury finds that the defendants were not in possession, and never had been, and that the plaintiff not only had the legal record title, but was in fact in possession at the time of the acts of trespass. This is not a case where a plaintiff, ousted of possession, is suing in ejectment to dispossess the defendants in possession, basing his claim upon a chain of record title only, not extending to the sovereignty.

HAMERSLEY, J. The refusal to charge in the language of the 9th request is not error. The weight to be given to an entry with color of title, upon the question of adverse possession, depends upon the circumstances of the case and the nature of the color of title claimed. It does not necessarily follow that adverse possession can be proved by less evidence

when the entry is under color of title than when it is not. Under the circumstances of this case the court properly left to the jury the weight to be given to the defendants' alleged color of title.

The other requests to charge, so far as applicable to the case disclosed by the finding, were substantially covered by the charge of the court.

The defendants, in argument, claimed error in the failure to charge in the language of the fifth request, as to what acts were necessary to establish in law a re-entry by an owner who had been ousted. The request relates to the statute against selling disputed titles, and is obscure. The court understood it° (and reasonably—for no other meaning seems consistent with the state of evidence or claims—) as a request to charge that if the plaintiff's grantor was disseized when he conveyed to the plaintiff, and the plaintiff claims that after receiving this conveyance he took possession of the premises, he must show that he in fact retook actual possession. The request was properly refused. The court did charge that if the jury found that the plaintiff's grantor was disseized at the time of conveyance to the plaintiff, their verdict must be for the defendants. The defendants cannot complain of this; it is more than they asked.

The requests to charge, including all that were made, cover some six printed pages. The charge extends over fifteen pages, and is open to the criticisms usually invited by undue length. This, however, as well as some occasional obscurity, is due in great part to an attempt to deal with the requests, many of which were unsuited to a clear presentation of the real issues. These issues were few: Was the grantor of the plaintiff disseized when he conveyed to the plaintiff? Did the deeds and other evidence, independent of the question of adverse possession, show ownership in the plaintiff? If so, had this ownership been terminated by a title through adverse possession acquired by the defendants? If not, was the land in the actual, exclusive occupation of the defendants at the time of the alleged trespass? These questions, except the one of the plaintiff's ownership without reference to the ques-

tion of adverse possession, all depended on the single question of fact,—were the acts of the defendants in respect to the land in question such as under the circumstances of this case prove an ouster, or a title by adverse possession? The law necessary to enable the jury to pass upon these questions was stated by the court with sufficient accuracy.

The defendants select from the charge eleven passages as being erroneous.

That portion of the charge stated in the first passage was given in view of the conditions disclosed by the finding. The meaning of the language of the deeds in evidence, and their legal effect, was a question of law, and the court properly held that these deeds showed a title of record to the land described in the deeds, to be in the plaintiff. The identity of the land so described and the land in dispute, was a question of fact for the jury; but it is stated in the finding that it was admitted that the land described in the deeds is the land in dispute, so that as to this fact there was really no controversy for the jury to settle. Under these circumstances, the omission of the court when charging that the title of record was in the plaintiff, to remind the jury that the identity of the land in dispute and the land to which a title of record was shown, was a question of fact for them, was a harmless omission.

The further and material question, whether the plaintiff's predecessors in title were actually the owners of the land de scribed in the paper title, was left to the jury as a question of fact, as will appear when we deal with that part of the charge.

The second, third, fourth and fifth passages, relate to the law of adverse possession. The nature of adverse possession, as involved in the case on trial, was fully and correctly given. *Huntington* v. *Whaley*, 29 Conn. 391, 397, 398. The defendants' brief suggests no ground of error in this part of the charge, except the claim that one passage implies taking a matter of fact from the jury, and another that a mere preponderance of evidence is not sufficient to sustain the defendants' claim. These alleged implications, in view of the context, are fanciful. The court tells the jury that they are to

take into account all the claims of the plaintiff and defendants, "and to determine whether the defendants have shown you by a preponderance of evidence that they have had such necessary adverse occupation of the property for the period claimed." And further, the jury were told: "It is not a matter of law. It is a matter of fact for you to determine, whether these acts and all others relating to this claimed possession are sufficient in your judgment, shown by a preponderance of evidence, to vindicate the claim here of adverse possession."

The sixth, seventh and eighth passages relate to the fact that the deed from Jeremiah Platt, the defendants' predecessor in title in 1773, states that the southern boundary of the land conveyed is "Samuel Burwell's Meadow," and the fact that the deed from Isaac S. Baldwin, the defendants' predecessor in title in 1819, states that the southern boundary of the land conveyed is the land of "Samuel Burwell's heirs;" in connection with the admitted fact that the land described as "Samuel Burwell's Meadow" and the land of "Samuel Burwell's heirs," is the land known as "Phillips' Meadow" claimed by the plaintiff, and the further fact that according to the record title Phillips' Meadow belonged to Samuel Burwell at the time of his death a few years subsequent to Platt's deed, and from 1778 to 1817, two years before Baldwin's deed, belonged to Samuel Burwell's heirs.

The court charges the jury, in substance, that the statements in these deeds amount to an admission on the part of the grantors that the Round Meadow lot owned by them is bounded on the south by the Phillips' Meadow lot owned by Samuel Burwell and subsequently by Samuel Burwell's heirs. This passage must be read in the light of the context. The court had just charged the jury that the defendants' claim that a mere paper chain of title does not constitute ownership, without possession being shown on the part of the owner or some grantor, was correct, but that this abstract proposition was immaterial unless it applied to the facts of the case; and if the jury found that the defendants' predecessors in title had admitted title to be in the plaintiff's predecessors, and so found the title or ownership established, that then it was not

necessary for the owner to show actual exercise of possession, because the title draws possession unless the owner has been ousted of that possession. The court then refers to the evidence of such admission, especially the deeds of Platt and Baldwin, and tells the jury that the language of these deeds amounts to an admission as stated on the part of the grantors, and closes this part of the charge by reminding the jury that the general proposition is true that something more than bare paper evidence of title must appear to establish it, and leaving to the jury to determine whether title is shown to have been in the line of the plaintiff's chain. This is substantially correct.

The defendants now claim that Platt and Baldwin were not their predecessors in title, because the defendants only claim title to the Round Meadow lot through Platt and Baldwin, and claim title to Phillips' Meadow lot (the land in dispute) through Lewis Merwin, administrator, in 1845. This is a mistake. The administrator was the agent of the law to sell the title which Thomas Merwin had at the time of his death in the piece of land described in the inventory as " Two acres and a half at Round Meadow, @ $12, $30." No other land was sold, and no subsequent deeds purport to convey any other land. It was not the administrator but Thomas Merwin, who was the defendants' predecessor in title; and the deed which gave title to Thomas Merwin bounds the land conveyed on the south by the heirs of Samuel Burwell. This deed, as well as the prior deed of Jeremiah Platt, is the act of the defendants' predecessor in title.

The defendants confuse their claims of title by adverse possession since 1869, and title by deed. The two claims are antagonistic, and must be considered each as distinct from the other. The title by adverse possession relates solely to Phillips' Meadow, as a distinct piece of land acquired by wrongful acts of the defendants continued for fifteen years. The title by deed relates to the Round Meadow lot of two and one half acres, which has come to the defendants by that name and description through a line of conveyances extending back to Jeremiah Platt in 1773. Their title by deed to Phillips'

Meadow, if any, is merely incident to their title to Round Meadow lot, and turns on a question as to the boundary of the latter lot. The designation of the lot by name and number of acres, is substantially the same in every deed from that of Jeremiah Platt in 1773 to that to the defendants' immediate grantor in 1876. The variation in language describing the boundary, begins in 1845. The prior deeds give the boundary as east on the beach and south on Samuel Burwell's heirs, or Phillips' Meadow; the subsequent deeds give the boundary as " easterly and southerly on the beach." A glance at the map shows that as a partial boundary this last is correct; Round Meadow lot is bounded " easterly and southerly on the beach;" it is also bounded easterly on Phillips' Meadow; moreover, as a boundary of the land included in Phillips' Meadow lot, the boundary is an impossible one, for Phillips' Meadow is not bounded southerly on the beach.

The real question between the parties, so far as the title by deed is concerned, was one of boundary. Upon this question the statements in the Platt and Baldwin deeds were evidence. Declarations of ancient persons in respect to boundaries are admissible. *Norton* v. *Pettibone*, 7 Conn. 319, 323; *Higley* v. *Bidwell*, 9 id. 446, 451; *Wooster* v. *Butler*, 13 id. 308, 315; *Kinney* v. *Farnsworth*, 17 id. 355, 362; *Long* v. *Colton*, 116 Mass. 414, 415. It is immaterial to the action of the jury, whether this evidence which they are to consider is called an admission, a declaration, or an act of ownership. That such evidence, in connection with the other evidence submitted to the jury, was sufficient to justify their finding the ownership of Phillips' Meadow to have been in the plaintiff's predecessors in title, does not admit of doubt. The documentary evidence not only showed the record title of the land to be in the plaintiff; it also established certain facts competent to prove the ownership of the land. The fact that Samuel Burwell in 1777 treated this land as his own, by devising it to his son Benedict; that this will was probated and the estate administered; that Benedict treated this land as his own, by conveying it to his brother Samuel, bounding it on the north by the Round Meadow lot; that Samuel Burwell, 2d, and his grandsons so

treated the land; that the adjoining proprietors of Round Meadow lot, in exercising their right of ownership over that lot, treated the Burwells as owners of the Phillips' Meadow lot. All these acts are evidence of ownership and, in connection with the unquestioned record title to this very land, are sufficient to justify the finding of the ownership of Phillips' Meadow in Daniel Merwin at the time Thomas Merwin became owner of Round Meadow lot. Ancient documents are admissible to prove ancient possession. *Malcomson* v. *O'Dea*, 10 H. L. Cas. 593, 614–616; *Boston* v. *Richardson*, 105 Mass. 351, 371; *Greenfield* v. *Camden*, 74 Me. 56, 63; *Boston Water Power Co.* v. *Hanlon*, 132 Mass. 483, 484; *Bristow* v. *Cormican*, L. R. 3 App. Cas. 641; 1 Greenl. Ev. § 141, *et seq.*; Stephens Dig. of Ev. pp. 42, 156. Such evidence is, in substance, evidence of acts of ownership and of facts tending to prove ownership, and, in many cases involving ancient possession, is the only evidence the nature of the case permits. Where, as in this case, it is coupled with an unquestioned title of record, the evidence is of a most satisfactory nature. While leaving the determination of fact to the jury, the court properly intimated its opinion that such evidence was sufficient to support a finding that Daniel Merwin was the owner of Phillips' Meadow. Being the owner, he and his successors in title had lawful possession entitling them to maintain an action against any stranger who should injure their property, even if they did not prove an exercise of possession by acts of actual occupation. It is the law of this State that ownership of real property gives a right of possession as much as ownership of personal property; and ownership in one case draws after it possession as much as in the other. *Bird* v. *Clark*, 3 Day, 272, 277; *Williams* v. *Lewis*, ibid. 498; *Bush* v. *Bradley*, 4 id. 298, 306. The possession involved in the fact of ownership is sufficient to maintain this action, if at the time of the injuries complained of the land was not in the actual, exclusive occupation of another. *Church* v. *Meeker*, 34 Conn. 421, 422; *Fitch* v. *New York, P. & B. R. Co.*, 59 id. 414, 422. Such was the rule before the adoption of the Practice Act. The right of an owner to recover for injuries to his land or

Merwin *v.* Morris et al.

to him as owner, was then controlled by the form of action. *Potter* v. *New Haven*, 35 Conn. 520, 522. It is unnecessary in this case to consider the possible effect of the abolition of forms of action upon these distinctions that were formerly essential in order to preserve the peculiar office of each form of action.

The ninth and tenth passages relate to the alleged ouster of the plaintiff's grantor at the time he conveyed to the plaintiff; and are sufficiently accurate. Section 2966 of the General Statutes was first enacted in 1727. 7 Col. Rec. 105, 106. The language then used, is "disseized or ousted of the possession thereof by the entry," etc. The terms "disseized or ousted" are used in their technical sense. *Sherwood* v. *Burr*, 4 Day, 244. The "ouster" is the same as that which at common law disabled a grantor thus ousted from transferring his title to another; *Goodman* v. *Newell*, 13 Conn. 75, 77; and is the same as that which, if continued for fifteen years, would make a perfect title in the occupant. *Sherwood* v. *Waller*, 20 Conn. 262, 269.

The eleventh passage is found at the close of the charge, where the court briefly states the substance of the issues previously discussed; and tells the jury that if they find the defendants have had adverse possession for fifteen years "prior to the date of the plaintiff's deed from Munger," their verdict should be for the defendants. The court should have said, "prior to the alleged trespass." There was an interval of four months between these two dates. The court, not unnaturally, treated them as coincident in speaking of an adverse possession claimed to extend over a period of twenty-seven years. The error was immaterial and harmless.

The court admitted evidence of the payment of taxes by the defendant Andrew B. Morris during the five years, 1888, '89, '90, '91 and '92. The reasons which would justify that admission would require the admission of similar evidence for the years 1887 and 1893, which the court rejected. We do not think, however, a new trial should be granted on account of this ruling. Payment of taxes is evidence on the question of adverse possession, because it tends to show that

the occupier claimed the land as his own. *Wren* v. *Parker*, 57 Conn. 529, 531. In this case it was not claimed that taxes laid on the whole of the lot in dispute were paid; but that the assessors had placed in the list a lot, a small portion of which extended across the boundary of the land in dispute. Assuming that the payment of the extra five or ten cents of taxes apportionable to this small bit of the land in dispute, tended to show that the defendant Morris claimed the land in dispute as his own, rather than to show that the defendant did not care to contest, for the amount involved, the action of the assessors in including this bit of the disputed land within the limits of a lot the defendant did own, we think the defendants got the full benefit of such evidence by the admission of the payment of taxes for five years, and that the rejection of such evidence for the years 1887 and 1893 did not injure them. Especially is this true in view of the charge, in which the court tells the jury that the defendants' claim, that for some six or eight years, from 1885 or 1886 onward, they paid the taxes on this property, and that that is regarded in law as powerful evidence upon the question of ownership; and also that the payment of taxes, as tending to prove the claim of ownership, is clearly admissible and is a circumstance the jury should take into account with the other proof on that question.

There is no error in the judgment of the Court of Common Pleas.

In this opinion the other judges concurred except BALDWIN, J., who dissented.