## NATHAN P. MERWIN *vs.* CHARLES E. BACKER.

Third Judicial District, Bridgeport, October Term, 1907.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

The admission in evidence of ancient deeds and other documents con-
stituting a mere paper chain of title, unaccompanied by evidence
of the possession of such alleged owners, if erroneous, is never-
theless harmless where the party in whose behalf it is received
proves a title in himself by actual adverse possession.

Where land conveyed is ambiguously bounded, as by "the sea or high-
way," or by "the beach and highway," or by "the bank and
highway," the grantee may ordinarily adopt that boundary which
is most advantageous to him.

Evidence that the *locus in quo* was claimed and used by the occupant
of "the bank lot" as part of it, and that other parties in interest
acquiesced therein, is admissible as showing their interpretation
of that expression.

Evidence of the payment of taxes upon the *locus* by the alleged oc-
cupant is admissible in support of his claim of adverse possession.

Evidence that an adjoining upland owner had improved and cultivated
the shore land in front of his premises adjacent to the *locus*, is
admissible to show the general situation and surroundings of the
property in question, but not to prove that such owner had ac-
quired title to the shore in front of his upland.

The exclusion of a bit of relevant evidence touching a collateral matter
will not justify granting a retrial of the action.

Proof of possession, without proof of ownership, is sufficient to enable
the plaintiff to maintain an action in the nature of trespass *quare
clausum fregit* as against a defendant who has no title.

Argued October 29th—decided December 17th, 1907.

ACTION in the nature of trespass *qu. cl. fr.*, brought to
and tried by the Superior Court in New Haven County,
*George W. Wheeler, J.;* facts found and judgment rendered
for the plaintiff, from which the defendant appealed. *No
error.*

*George E. Beers,* with whom was *Harry W. Doolittle,* for
the appellant (defendant).

*William B. Stoddard* and *Omar W. Platt,* with whom
was *Robert C. Stoddard,* for the appellee (plaintiff).

HALL, J. This is one of three cases argued before us

Merwin *v.* Backer.

at the October term, 1907, involving the question of the
ownership of a strip of sandy beach some 800 feet in
length and from 100 to 200 feet in width, in the town of
Milford, bounded easterly by a highway called the Gulf

Road, westerly by Long Island Sound, and southerly by
land of Dumond P. Merwin.   See *Spencer* v. *Merwin, ante,*
p. 330, and *Roberts* v. *Merwin, post,* p. 347.   The above
diagram illustrates the situation described.

The present case relates to the ownership of a part of said strip at its southerly end, designated Plot 2 on a map made a part of the finding, bounded easterly by said Gulf Road 219 feet, northerly by tract designated Plot 1 on said map 135 feet, westerly on Long Island Sound 219 feet, and southerly on land of Dumond P. Merwin 135 feet.

The complaint alleges that on the 1st of July, 1905, the plaintiff owned and possessed said tract, and also a part of said strip north of Plot 2, and that on said day the defendant unlawfully entered upon Plot 2 and erected a fence thereon.

In his answer the defendant admits the erection of the fence, and alleges that he then owned said tract, and that he and his predecessors in title had for more than fifteen years been in continuous adverse possession of it.

Upon the question of the ownership and possession of Plot 2, the trial court, from the evidence presented and from viewing the premises, found these facts :—

The sandy strip in question, which is above high-water mark, is unfit for cultivation and produces only rough grass not worth harvesting. The Gulf Road, forming its easterly boundary, has from time immemorial been maintained by the town of Milford as a public highway. Another highway, called Old Field Lane, enters the Gulf Road at nearly right angles, at a point nearly opposite the northeasterly corner of Plot 1. Prior to 1840, Gulf Road, in front of Plots 1 and 2, ran nearer the beach than it now does, and the Plots 1, 2, 3, and 4 were then not more than half their present width, but have since become wider by accretion. The strip south of Plot 2, owned by Dumond P. Merwin, is somewhat cultivated. Easterly of the Gulf Road and at the foot of an embankment ten or fifteen feet high is a line of ancient fence now out of repair. A tract at the top of the embankment, containing about five acres and extending as far north as Old Field Lane, was known as the " bank lot."

In 1660 the bank lot, together with said sandy strip westerly thereof, including, as the court finds, Plot 2, and

the others marked Plots 1, 3, and 4, on said map, were embraced in a tract acquired by the town of Milford by a sale from the Indians to one Bryan, and by him assigned to the town, and were allotted in lots to the several inhabitants of the town, and confirmed by the Saltonstall patents of 1713 to the "Proprietors, Inhabitants of Conn.," May 22d, 1713. There is no record of an allotment of Plot 2 to any named person.

In 1731 Andrew Sanford, by warranty deed, conveyed land, including, as the court finds, Plot 2, to his son Samuel, bounding it " on ye west with the sea or highway." This was the first known deed after the patent.

In 1765 Samuel Sanford, Jr., by warranty deed, conveyed to Andrew Sanford land, including, as is found, Plots 2, 1, and 4. A part of the description was, " being bounded with the bank and highway northerly and westerly."

In 1782 Martha Sanford, administratrix of Andrew Sanford, conveyed to David Merwin, the plaintiff's grandfather, land, including, as the court finds, Plot 2 and Plot 1, bounding it " southwesterly on the beach and highway."

In 1816 there was set out as dower to Eunice Merwin, the widow of David Merwin, " also bank lot, so-called, containing 6 acres, 3 roods, and 8 rods." This, it is found, included Plots 2 and 1.

In 1837, on the death of said widow, there was set out to her daughter Mehitable, wife of Samuel Potter and aunt of the plaintiff, said bank lot, in two parcels, including, as is found, Plots 2 and 1, one of which was bounded " westerly on bank of Long Island Sound," and the other " south and west on bank of Long Island Sound." After the death of Eunice and during the lifetime of Mehitable, Mark Merwin, the plaintiff's father, and Merritt Merwin, Mark's twin brother, took possession of the bank lot, including Plots 2 and 1, in connection with the farm of David Merwin, and occupied and claimed title thereto thereafter. Mehitable made no claim to said land while it was so occupied by her brothers, nor was it inventoried as a part of her estate upon her death in 1862, but no deed

of said property from Mehitable to any one was presented in evidence.

In 1861, the partnership theretofore existing between the brothers Mark and Merritt Merwin having been dissolved, Merritt, by quitclaim deed, conveyed to Mark the north part of the bank lot, containing three acres more or less, bounded northerly on highway, which was the Old Field Lane, and westerly on highway; and Mark conveyed to Merritt, the grandfather of Dumond P. Merwin, the south part, bounding him westerly on highway. From that time until the death of Mark in 1882 these brothers were in the open, exclusive, continuous, adverse possession of the bank lot and of Plots 2 and 1.

By his will, probated in 1882, Mark Merwin gave to his son Nathan P. Merwin, the plaintiff, the "bank lot, socalled, adjoining the Hill lot, containing $3\frac{1}{2}$ acres, more or less," and it was so distributed to the plaintiff, and since 1882 he has been in the open, exclusive, continuous and adverse possesion of said bank lot and of Plot 2, and also of Plot 1 until dispossessed of the latter by Edward A. Spencer in 1889, as hereinafter stated. The plaintiff and his predecessors above-named have used Plot 2 for such purposes as they have had occasion to, and for which it was suitable. They have stored sedge and seaweed and boats upon it; driven a plow through it; built a capstan upon it; used it in drawing nets; have given persons permission to use it, and prevented others from using it. The plaintiff has always claimed to own it, and since 1900 has placed this beach, including Plots 2 and 1, in his tax list, and paid taxes upon it. Before that time it did not appear in the tax lists as separate property. It did not appear that any one, except the plaintiff and his said claimed predecessors in title, was ever in possession of Plot 2 under a claim of ownership, or that any one else ever claimed to own it until the attempted conveyance of it by Spencer in 1905. The said Edward A. Spencer at times occupied some parts of Plot 2, but not under a claim of right, or in such a way as to acquire any title thereto.

The sources of defendant's title as found by the trial court, are these : In the summer of 1889 the said Edward A. Spencer, a colored man, erected upon Plot 1, near high-water mark, a one-story house, placed upon posts, to which he, at different times, made additions, and where he has ever since lived, and in connection with which has so occupied Plot 1 for more than fifteen years as to have acquired title thereto by adverse possession prior to February, 1905. See *Spencer* v. *Merwin, ante*, p. 330.

February 7th, 1905, Spencer gave quitclaim deeds to Charles H. Wilcox, Jr., of Plots 2, 3 and 4, receiving therefor, at different times, about $15. Their value was about $2,000.

February 11th, 1905, said Charles H. Wilcox, Jr., quitclaimed Plot 2 to the defendant Backer, who in August quitclaimed it to Roberts, the plaintiff in *Roberts* v. *Merwin, post*, p. 347.

February 11th, 1905, Charles H. Wilcox, Jr., quitclaimed Plot 3 to George Wilcox, who in August, 1905, quitclaimed it to said Roberts.

Spencer had no title to the premises so conveyed by him to Wilcox. He never believed that he had any title to Plot 2, and never claimed any until he gave the deed to Wilcox.

Upon these facts the trial court held that the defendant's claim of title, which rested upon the claimed title of Spencer, had failed, and found that the plaintiff was in possession of Plot 2 at the time of the trespass by the defendant, and rendered judgment for the plaintiff.

Upon the trial the defendant objected to the admission in evidence of the deed of Andrew Sanford to Samuel Sanford, and of all the subsequent deeds, devises and distributions offered in support of the plaintiff's claimed title, upon the grounds that they failed either to trace the title back to the government, or to a grantor in possession ; and that they did not embrace the shore land in controversy. The court admitted these instruments subject to subsequent proof of plaintiff's title under them, and of the

identity of the property described in them with that in suit.

The defendant was not prejudiced by these rulings. It is true that the finding shows that there was no evidence offered, except the instruments themselves, of possession of the beach land in question by any of the plaintiff's claimed predecessors in title prior to the possession by the brothers Mark and Merritt Merwin. Whether such ancient instruments as these are not in themselves prima facie evidence of such a use and possession by their grantors, as is ordinarily made or taken of land of the character deeded, and of a use and possession which might ripen into an adverse title, it is unnecessary for us to decide, since the court has found an actual adverse occupancy of Plot 2 by the Merwin brothers and Mark Merwin, from a time apparently long prior to 1861 down to 1882, and by the plaintiff ever since the latter date. Mark Merwin's deed of 1861 from his brother was therefore from a grantor in possession of the *locus*, and who may then have been in possession for more than fifteen years. Mark Merwin, the plaintiff's devisor, was in possession of the *locus* in connection with the upland, and for a sufficient period to have acquired an adverse title to it. And further, the plaintiff himself by his possession since 1882 has acquired title by adverse occupancy.

The *locus* is not necessarily excluded by the descriptions in certain deeds of the west boundary, or the northerly and westerly boundary of the land conveyed, as "the sea or highway," or "the beach and highway," or the "bank and highway." The grantee in each of these deeds might adopt that one of the two named boundaries which was most favorable to him. *Melvin* v. *Proprietors of Merrimack River Locks*, 5 Met. (Mass.) 15, 27; *Esty* v. *Baker*, 50 Me. 325; *Marshall* v. *Niles*, 8 Conn. 369, 374. The beach referred to by the words "beach and highway," may have been the beach between high and low-water mark, and not the strip between high-water and Gulf Road; *Dawson* v. *Orange*, 78 Conn. 96, 119, 61 Atl. 101; *Wakeman* v.

*Glover*, 75 Conn. 23, 27, 52 Atl. 622; and the bank referred to by the words " bank of Long Island Sound," and "bank and highway," may have been the beach between high and low-water and not the steep embankment east of the highway. Nor are we prepared to say that if the town, having laid out Gulf Road along high-water line over land which it owned, subsequently granted the upland, bounding it westerly by the highway, its grantee and others taking under him would not, while the relative location of the highway and high-water line remained practically the same, take title to the entire highway (*Church* v. *Meeker*, 34 Conn. 421, 430), and so to the land afterward formed by accretion. *Mather* v. *Chapman*, 40 Conn. 382, 395.

The Gulf Road is not necessarily the western limit of the land devised to the plaintiff by the will of Mark Merwin as "the bank lot," and so described in the distribution of his estate ; and evidence that the plaintiff claimed and used the *locus* as a part of it, and that other parties in interest acquiesced in such claim and use, was admissible as showing their interpretation of the term "bank lot." *French* v. *Pearce*, 8 Conn. 439, 442.

That the plaintiff had paid taxes since 1900, upon a list in which the property in question was specifically described, and prior to that time upon a list in which it was included, was proper evidence upon the question of plaintiff's adverse possession. *Merwin* v. *Morris*, 71 Conn. 555, 574, 42 Atl. 855.

Evidence that Dumond Merwin had improved and cultivated the shore land in front of his property and immediately south of Plot 2, was admissible to show the general situation and surroundings of the *locus*. It was not received to prove that Dumond P. Merwin had acquired title to the shore in front of his upland, and its admission for the purpose for which it was received did not entitle the defendant to show that Dumond Merwin's right to the shore which he had improved, had been questioned.

The defendant having testified that as the agent of a Mrs. Steele he called upon the plaintiff to negotiate a purchase of the bank lot and Plot 2, and that the plaintiff then said that he did not own or claim west of the highway, and the plaintiff having denied that such an interview occurred and that he made such a statement, the defendant offered the testimony of Mrs. Steele that she had instructed the defendant to see the plaintiff about the sale of the bank lot. This evidence was rejected by the trial court.

Even if it tended to contradict the plaintiff as to the collateral matters of the occurrence of the interview, and the negotiations for a purchase, it had not sufficient bearing upon the question of his having made the alleged admission, to justify the granting of a new trial for its exclusion.

Most, if not all, of the rulings complained of by the defendant, relate to matters affecting the question of the plaintiff's claimed ownership of the *locus*, either by deed or by adverse possession. But the complaint alleges both ownership and possession on the day of the trespass, and proof of the latter averment, without proof of title in the plaintiff, either by deed or adverse occupancy, was sufficient to sustain this action, in the absence of any title in the defendant. If the defendant had no title he had no right to disturb the plaintiff's possession, nor is he concerned with any weakness in the plaintiff's title.

The facts show a complete failure of the defendant's alleged title, and that his claim to the *locus* is without merit. He has no title or claim whatever to Plot 2, except under his deed of February, 1905, from Wilcox, whose only title was the deed he received a few days before from the colored man Spencer. But the trial court has found that Spencer never had any title to Plot 2 by deed, adverse possession, or otherwise, and that he never believed or claimed that he owned it, and we do not find that it committed any error in reaching that conclusion.

The facts found are ample to sustain the judgment ren-

dered.  The application to rectify the appeal under § 801 of the General Statutes is denied.

There is no error.

In this opinion the other judges concurred.