SAMUEL W. SMITH *vs.* ELBERT D. FORD ET AL.

Third Judicial District, Bridgeport, October Term, 1909.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

A substantial compliance with a party's requests to charge removes any just cause of complaint upon his part.

The question whether a certain parcel of land was or was not included in an ancient allotment or grant by a town to its resident freeholders is, in case of ambiguity, one of fact for the determination of the jury upon all the evidence in the case.

General statements in historical works are of little or no weight in determining such a question, especially if copies of the old deeds themselves—the undoubted source of such statements—are in evidence; and therefore a comment to that effect in the charge will not constitute sufficient ground for a new trial.

This court will not consider claims which are clearly inconsistent with those made below.

The fact that several persons had at different times taken sand or gravel from the land in question, without consent of the town, is not sufficient to show an actual, exclusive possession in some one else than the town.

The admission of evidence of adverse possession is immaterial if the party in whose behalf it is received makes no claim of such a title, and the jury are so instructed.

The owner of the legal title is constructively in possession of land which is not shown to be in the actual, exclusive possession of another.

This court cannot pass upon the effect of evidence in the absence of the evidence itself.

Argued October 27th, 1909—decided January 4th, 1910.

ACTION to recover damages for the removal and conversion of two small portable buildings and their contents, placed by the plaintiff on the seashore above high-water mark in the town of Milford, brought to the Court of Common Pleas in New Haven County and tried to the jury before *Simpson, J.;* verdict and judgment for the defendants, and appeal by the plaintiff. *No error.*

*George E. Beers,* with whom was *Harry W. Doolittle,* for the appellant (plaintiff).

*William B. Stoddard* and *Robert C. Stoddard,* for the appellees (defendants).

HALL, J. Between the fall of 1905 and March 5th, 1906, the plaintiff, a resident of the town of Ansonia, built two portable houses, eight feet by ten, and twelve feet high, to be used when camping out or fishing, and carried and placed them upon Gulf Beach, which is part of a long sandy strip of uninclosed land in the town of Milford, known as "Indian Neck" or "Indian Side," and is bounded westerly and southerly by Long Island Sound. A small sketch of Gulf Beach appears in the case of *Merwin* v. *Backer,* 80 Conn. 338, 68 Atl. 373.

The plaintiff had no title to the land upon which he so placed his houses, but he afterward procured two quit-claim deeds from one Charles H. Wilcox, Jr., who also had no title, and caused them to be recorded in the Milford land records.

On or about March 29th, 1906, after timely notice to the plaintiff to remove the buildings, the town of Milford by its first selectman, the defendant Ford, removed the same, and their contents, and placed them upon land of said Ford in the town of Milford. This act of removal of the plaintiff's personal property is the injury complained of.

In their answer the defendants allege that since 1662 the defendant town has been in possession of the land de-

scribed in the complaint, under a claim of title thereto, and has used it in part as a public highway, and in part for the purpose of obtaining gravel and earth for repairing highways. These averments were denied by the reply.

The finding states that upon the trial the plaintiff offered evidence to prove, and claimed to have proved, that said Indian Neck was purchased from the Indians in 1660, by one Alexander Bryan, and, in the same year, assigned by said Bryan to the town of Milford; that the town thereafter in the same year allotted or divided it among fifteen freeholders whose title was afterward confirmed by the Saltonstall patent of 1713; that the fifteen freeholders were long since dead, and their heirs unknown, and that the title to the beach had therefore either escheated to the State, under § 413 of the General Statutes, or was in some unknown individuals, and not in the town.

The defendants claimed that the land so divided among the freeholders did not include that described in the complaint.

Copies of the Indian deed, the Bryan assignment, the Saltonstall patent, and the grant of the town to the fifteen freeholders, are printed on pages 26 to 31 of the appeal record in the case of *Merwin* v. *Backer,* 80 Conn. 338, 68 Atl. 373.

The jury returned a verdict for the defendants, and the trial court denied the plaintiff's motion to set it aside as against the evidence.

The alleged failure to charge in accordance with the sixth, eighth, tenth, seventeenth and eighteenth of the plaintiff's twenty-two requests to charge, are among the forty or more reasons of the plaintiff's appeal.

The sixth, eighth and tenth requests were in effect, that, to recover, the plaintiff was not required to prove title to the land upon which he placed his two portable houses, but that the burden was upon the defendants to prove the title of the town as alleged in the answer.

The court seems to have complied with these three re-
quests. In paragraphs 2, 3 and 4 of the charge, the court
said that it became important to consider who was the
owner of that part of Gulf Beach upon which the houses
were placed. It said: "The burden is upon the defendant
to show that at the time it had title to that land, and posses-
sion of it, and if the defendants have failed to so satisfy you
of the town's possession, by a preponderance of evidence,
the plaintiff is entitled to recover, and his right to recover
is not at all dependent upon . . . the plaintiff's having
any right in the land. . . . You are therefore not to be
affected in your verdict by the strength or weakness of any
claim which the plaintiff may have had or thought he had
to the land."

The seventeenth and eighteenth requests were, in sub-
stance, that the court should charge that upon the undis-
puted evidence the land in question was acquired by Bryan
in 1660 and assigned by him to the town and by the town to
the said fifteen freeholders.

In paragraph five of the charge the court instructed the
jury that by the Indian deed of 1660, and the Bryan as-
signment, and the grant from the Colony in 1685, a valid
and complete title to the premises in question vested in the
town of Milford, and regarding the allotment by the town
to the fifteen persons, charged the jury in paragraphs 8, 9
and 10 as follows: "It is for you, gentlemen of the jury, to
decide whether this allotment or division included the whole
of the Bryan purchase from the Indians, or whether it in-
cluded only a part, and if a part only, whether that part in-
cluded the premises in question. You should, of course,
consider all of the evidence bearing upon these questions,
as well as the language of the vote of the meeting itself.
And if you cannot find from all of this evidence, that the
division or allotment included the whole of the Bryan pur-
chase, or if you find that it included a part only, and cannot
find that that part included the premises in question, then

you should find that the town did not at that time allot the premises in question, but retained the title thereto."

This instruction was correct. The Indian deed describes the land sold to Bryan thus: "All that land called the neck, onely we have reserved twenty acres to be at our owne dispose, the other land Swamps, wood grounds or what-so-ever with all the privileges benefits or what-so-ever belonging to the said tract of land." The language of the allotment is as follows: "Divers persons propound for a division of land on the Indian . . . out of the late purchase and it was agreed that there shall be a quarter part of an halfe division allotted out in the Indian old planting field the lotts are to begin at that end next Sargt Fowlers meadow and soe to goe toward the Sea and about the Swamp so far as the land will Admitt in that purchase. It was alsoe agreed that these Ffollowing lott should be drawn and they were drawn in the presence of the Court (but with caution) Viz: that is Mrs. Prudden be supplyed in the place where her former lott fell, that then her lott is to be laid and the Next lot in order is to Succeed in her steed and soe likewise. If any other change fall in any of the lotts drawn the same order is to be attended. The order of the lotts granted by the towne & drawn to the severall particular respects are as followeth, (Here follow fifteen names with numbers from 1 to 15 opposite them). . . . Milford Records 1660. A towne meeting held ye ninth of January Anno 1660. The division of land that was granted in the Indian old planting field was now again debated & by vote the former grant is Confirmed."

It appears by this language that the proposed division was "of land on the Indian. . . . If we fill in the blank after the word "Indian" with the word "Neck" or the word "Side" or the word "land" or the words "old planting field," it does not appear upon the face of the instrument itself that all the land on the "Indian Neck" or "Side" or "Indian land" or "on the old planting field" was

intended to be divided among the fifteen persons. Again, it is said that the division is to be "out of the late purchase," and that it was agreed that there shall be "a quarter part of an halfe division allotted out in the Indian old planting field." And it appears that that was the division which was confirmed at the town meeting of January 9th, 1660. The allotment does not show upon its face that it included all the land purchased by Bryan and assigned to the town; its language rather indicates the contrary. Whether the extrinsic evidence showed either that the entire Indian purchase, or that the land upon which the plaintiff's two houses were placed, was embraced in the allotment was a question for the jury. *Merwin* v. *Morris*, 71 Conn. 555, 569, 42 Atl. 855.

The following statements, one from a history of New Haven County and the other from a history of the Colony of New Haven, were admitted in evidence: "In 1660 Indian Neck (which had just been purchased of the Indians) was divided among 15 planters." "In that year [1660] the Indian Neck was purchased and divided among 15 planters." The plaintiff complains of the following language of the court in paragraph 11 of its charge respecting this evidence: "And I think that I ought to say in this connection, gentlemen of the jury, that while the historical statements corroborate the fact that there was a division of the land, or the portion thereof, which Bryan purchased from the Indians, yet those historical statements are entitled to very little weight, if any, in determining just how the allotment or division was in fact made, or what portion was in fact divided or allotted, when you have for your consideration the original act of the town by which the division was made."

In making this comment the trial judge evidently thought, and probably with good reason, that in the copies of the ancient deeds in evidence the jury had before them the same sources of information, as to what land was allotted to the fifteen planters, as these historians had when

they made these statements, and that they were therefore, at the most, no more than the opinions of these writers as to the effect of the deeds which were before the jury. But these statements of the historians were apparently made as parts of an account of how the town of Milford was first settled, and how its early settlers acquired title to their land, and not as statements of whether the whole or only a part of the Indian purchase was allotted to the fifteen planters. The comment of the trial judge upon this evidence furnishes no sufficient ground for a new trial of this case.

In his brief plaintiff's counsel argues that the town never acquired title to the land in dispute, either under the Indian deed and the Bryan assignment of 1660, or by the subsequent confirming grants and patents, and claims that the court erred in instructing the jury to the contrary. We do not discuss this claim, as it is clearly inconsistent with that made by the plaintiff in the trial court. The finding states that he there claimed, and asked the court to charge, that the town did acquire title to the land in dispute, and that it afterward granted it to the fifteen freeholders.

There were many exceptions to rulings upon questions of evidence which it would be unprofitable to repeat here. Generally stated, those complained of in the plaintiff's brief were in admitting evidence offered by the defendants that the town had for a long period either taken, or controlled the taking of, sand and gravel from this beach, and in excluding certain evidence offered by the plaintiff that gravel and sand had been so taken by individuals without the consent of the town. The rejected evidence offered by the plaintiff was clearly insufficient to show an actual exclusive possession in another than the defendant. It is immaterial if that offered by the defendants and received was insufficient to prove a title in the town by adverse possession, since the jury were expressly instructed that no such title was claimed by the defendants. The defendants were

Smith *v.* Ford.

not, under the pleadings, required to prove that the town was in the actual possession of the locus at the time the plaintiff placed his houses on the beach. Having acquired title by the deed and assignment of 1660, it was, so long as it retained that title, constructively in possession, in the absence of actual exclusive possession by another. We find no error in the rulings complained of.

The basis of the plaintiff's claim in this court, that the trial court erred in refusing to set aside the verdict as against the evidence, is that it appears upon the face of the allotment of 1660 that it granted to the fifteen persons all the land acquired by the town from the Indian deed and the Bryan assignment, and that it therefore appeared that the defendant town had no title to the locus when it removed the plaintiff's houses. As we have before stated, it does not appear from the language of the allotment itself that all the land acquired from the Indians was in fact divided among the fifteen freeholders. We cannot say whether or not there was controlling extrinsic evidence showing that the locus was embraced in the allotment of 1660, as the evidence presented at the trial is not before us.

There is no error.

In this opinion the other judges concurred.