THE NEW BRITAIN TRUST COMPANY, ET AL., EXECUTORS (ESTATE OF HOWARD C. NOBLE) *vs.* S. LESLIE SPENCER ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, JS.

Argued June 14th—decided August 15th, 1933.

*Robert C. Stoddard* and *Harold C. V. Eagan,* for the appellants (defendants).

*George E. Beers* and *William L. Beers,* for the appellees (plaintiffs).

AVERY, J.   The plaintiffs brought this action as executors of the estate of Howard C. Noble, deceased, alleging in their complaint that they were the owners of and in lawful custody of a tract of land in Sachem's Head, Guilford, and that the defendant town, through its selectmen, entered upon this land and were erecting monuments and otherwise disturbing its surface, and sought an injunction to prevent the continuation of the operations and damages.   The defendant filed an answer setting up that a public highway extended across the premises, and the defendant town and its selectmen had entered thereon for the purpose of marking the road and keeping the same in reasonable repair.   The land in question is bounded north and west by the waters of Long Island Sound and various bays and inlets, and south and east by the public highway. It appears that there is in existence a highway

running from the bridge to the town of Guilford, bounding the plaintiffs' land on the easterly side. The defendants claim that there was originally a public highway which ran across plaintiffs' property and which included within its boundaries the land upon which the town and its selectmen had entered.

The trial court found that at some time a highway extended across the land of the plaintiffs to the water's edge, but just where was not determinable from the evidence, and rendered judgment for the plaintiffs because defendant had failed to sustain the burden of proving its special defense, that at the place of the alleged trespass the town had a highway easement. The appellants attack this finding of the court and ask various additions thereto, and have certified portions of the evidence in connection with their claim. A careful reading of the evidence, however, shows that no correction in or addition to the finding can be made which would affect the ultimate conclusion of the court. "A highway, which is a public right of passage over another man's ground, like a grant from an individual, must be defined with reasonable certainty. The public must have the means of knowing how far they may travel, without becoming trespassers, and the individual, to what extent his land may be occupied by others." *Beardslee* v. *French,* 7 Conn. 125, 127; *Crawford* v. *Bridgeport,* 92 Conn. 431, 436, 103 Atl. 125; *Hinckly* v. *Hastings,* 19 Mass. (2 Pick.) 162, 164; *Barnes* v. *Fox,* 61 Iowa, 18, 15 N. W. 581, 582; *Abbott* v. *Johnson County,* 5 Kan. App. 162, 48 Pac. 922.

The court found that at the May session of the General Assembly in 1824 (Private Laws, 1824, p. 1291) the State of Connecticut incorporated the Guilford and Durham Turnpike Company. The Act of incorporation set forth that a road "should be owned,

made and maintained by a turnpike company, as herein authorized," and also provided that unless a bond, in the sum of $10,000 was executed, conditioned on the building of a road by the first day of November, 1828, the act of incorporation should be of no force, and the road described in the report should cease to be a public highway. No bond was presented in, evidence, and a search of the office of the treasurer of Connecticut failed to disclose evidence of such a bond having been filed.

The Guilford and Durham Turnpike Company was listed among the turnpike companies by the State in 1870. The defendants claim that this turnpike was discontinued as such about the year 1871, and it thereupon became a public highway by virtue of General Statutes, § 1445, which provides that "all discontinued turnpikes and parts of turnpikes shall remain public highways in the town or towns where situated;" and also by virtue of General Statutes, 1866, p. 512, § 93, which provides: "Whenever any turnpike company, for the period continuously of one year or more, shall have wholly neglected to repair its road, and ceased to take toll thereon, such neglect shall be a forfeiture and abandonment, by said company, of its corporate powers; and said turnpike road, from and after the expiration of said year, shall be and remain a public road of the town or towns where situated;" and, further, by virtue of the Public Acts of 1876, p. 109, Chapter 49: "That all turnpikes and parts of turnpikes heretofore discontinued, shall be and remain public highways in the town or towns where situated, the same as if laid out by the selectman thereof, or by the Superior Court in the manner by law provided."

Assuming this to be so, the turnpike layout, as appears from the exhibits, starts at Durham, some twelve miles from Guilford center, and proceeds

thence by angles and distances with occasional monuments to the north end of Guilford Green. The description then proceeds: "And beginning at the southerly corner of the said square in the centre of the present highway leading to Sachem's Head, [thence follow numerous courses and distances] to low-water mark at Sachem's Head Harbour . . . and from the southerly end of Guilford Public Square to the farm road, so-called near the farm gate, said road is laid 3 rods wide . . . and for the remaining distance to Sachem's head harbour said road is laid four rods wide." As appears from the exhibits, the distances from Guilford Green to Sachem's Head Harbour along the course indicated is some four miles, and the course described does not contain a single landmark.

At the trial, the defendants produced an engineer who had made a map whereon he had plotted the course of the Guilford and Durham Turnpike from Guilford Green to highwater mark across the plaintiffs' property. He testified, however, that he had not followed the course of the original layout from Guilford Center to the highwater mark, but had commenced at highwater mark at a point which he considered to be the terminus of the ancient highway from his observations and information given him by various other persons, and had plotted the presumed course of the highway by superimposing tracing paper upon the map and then tracing the course of the highway so as to bring it out at the proper point on Guilford Green. From other witnesses, there was conflicting testimony as to where the road ran across the property of the plaintiffs; and, upon all the evidence, the trial court concluded that the defendants had failed to show the location of the ancient highway across the plaintiffs' land, and thereby had failed to establish their special defense. The testimony upon

this point was in conflict and we cannot say that the conclusion of the trial court was not one it could reasonably reach.

There is no error.

In this opinion the other judges concurred.