JOSEPH E. ARBORIO, ADMINISTRATOR (ESTATE OF
PETER H. ARBORIO) *v.* HARTFORD ELECTRIC
LIGHT COMPANY.

MALTBIE, C. J., BROWN, JENNINGS, DICKENSON and DALY, Js.

Argued January 6—decided February 24, 1944.

*Frank Covello,* for the appellant (plaintiff).

*Warren Maxwell,* for the appellee (defendant).

MALTBIE, C. J.   The plaintiff's intestate, his son Peter, was employed by a corporation engaged in reconstructing a railroad bridge over a highway under a contract with the state highway department; he was guiding with his hand a heavy piece of steel structure as it was being moved by a crane; the cable which suspended the steel from the arm of the crane came into contact with one of the wires in an electric transmission line belonging to the defendant; and Peter was electrocuted.   The complaint was based upon claimed negligence on the part of the defendant in not warning the workmen on the job of danger from the wires or in not safeguarding them by moving the wires or by providing some protective device to prevent such an accident as occurred.   The trial court directed a verdict for the defendant on the ground that as to it Peter was a trespasser to whom it owed no duty to take any measures to safeguard him, and from its refusal to set aside the verdict the plaintiff has appealed.   The only question is the correctness of the trial court's conclusion that Peter was to be regarded as a trespasser and as such was not entitled to recover.

The facts in evidence relevant to that issue are for the most part undisputed.   The contractor was en-

gaged in replacing a wooden trestle over the highway with one built of steel and concrete, and the work being done by the crane was in pursuance of that undertaking. The railroad ran in a northerly and southerly direction, and the crane was located on the west side of it. The defendant had acquired by deed a right of way for its transmission line twenty-five feet in width and running parallel with and next adjacent to the land of the railroad. The deed described the defendant's interest as "an easement for the erection and maintenance of a pole and wire line"; the grant was for a term of ninety-nine years at an annual rental; it gave the defendant the right to trim, cut or remove any obstructions within the right of way which would be a "menace to the working operation" of the line; but it reserved to the lessor "the right to use and occupy any part of said strip of land above described in any manner and to any extent not inconsistent with or interfering with the use herein granted to said lessee." The highway over which the bridge was being constructed had existed for a great many years but had never been formally laid out. To provide for its reconstruction into a modern paved highway and to afford room for the abutments of the bridge, the Hartford bridge commission, acting through the highway commissioner, had acquired by deed or eminent domain land along the old road. In so doing it had taken by eminent domain a piece of land next to the old highway which was within the boundaries of the defendant's right of way. The proceedings were brought against the owner of the fee and the taking was "subject to easement in favor of" the defendant.

The jury could hardly have found otherwise than that one pole of the defendant's transmission line, while it was outside the limits of the old highway, was within the boundaries of the land taken; that it stood

about ten feet southerly of the northern boundary of that land; and that Peter, when he received the electric current, was not more than six or eight feet northerly of the pole. He was then within the boundaries of the land taken for the highway. While the evidence does not so definitely establish that he was within the limits of the defendant's right of way, the jury might have so found, and we will assume that he was, as apparently the court did. The defendant's right of way was not such that Peter could be regarded as a trespasser on its property; *McPheters* v. *Loomis,* 125 Conn. 526, 530, 7 Atl. (2d) 437; but this would not necessarily determine the extent of the defendant's duty toward him; under the circumstances present in that case, we held (p. 533) that the owner of the easement owed no greater duty to the plaintiff, who was on the land without right, than would the owner of the land. Whether the last ruling in that case would be applicable in such a situation as the one before us we do not need to determine, because upon evidence, which is substantially undisputed, Peter was rightfully on the land where he was killed.

The land for the highway was taken under § 452e of the General Statutes, Cumulative Supplement, 1939; this authorizes the bridge commission, acting through the state highway commissioner, to exercise all the powers "provided by law with reference to the taking of land or any interest therein for highway purposes by the highway commissioner." The proceedings followed the provisions of § 1528 et seq. of the General Statutes as amended, under which the highway commissioner is empowered to take land for highways. They resulted in the taking of an easement in the land for highway purposes. *Kratochvil* v. *Cox,* 129 Conn. 246, 249, 27 Atl. (2d) 382. While the public right thereby acquired is frequently referred to in our cases

as an easement for public travel, it embraces more than the right of travelers on the highway to pass and repass. In *Peck* v. *Smith*, 1 Conn. 103, in which the nature of the right was carefully considered and definitely established to be an easement, Judge Swift gave this definition (p. 132): "A highway is nothing but an easement, comprehending merely the right of all the individuals in the community to pass and repass, with the incidental right in the public to do all the acts necessary to keep it in repair." This definition is quoted in *Newton* v. *New York, N. H. & H. R. Co.*, 72 Conn. 420, 426, 44 Atl. 813. See also *Nicholson* v. *New York & New Haven R. Co.*, 22 Conn. 74, 85; *Woodruff v. Neal*, 28 Conn. 165, 167. In *New Haven* v. *Sargent*, 38 Conn. 50, 54, we upheld the right of the officers of a town to take material within the highway bounds and use it for the purpose of construction, improvement or repair of the highway at other places; we quoted from the Code of 1650 the preamble to the statute concerning the maintenance of highways, and said: "This quaint preamble does not *prescribe* the manner in which highways are to be maintained, but it *recognizes* the principles which should govern and have ever since governed the legislation of the state and the officers of the towns in the maintenance of them. These principles contemplated their maintenance in a 'fit posture for passage according to the several occasions that should occur,' not only 'for the comfort of man and beast,' but for 'the profit and advantage of the people,' and therefore contemplated all such improvements in structure and grade, as 'occasions' occurring in consequence of the advancement and growth of the country, and particularly of populous and growing cities, should make necessary." See also *New York, N. H. & H. R. Co.* v. *Fair Haven & W. R. Co.*, 70 Conn. 610, 621, 40 Atl. 607, 41 Atl. 169;

*Canfield Rubber Co.* v. *Leary,* 99 Conn. 40, 47, 121 Atl. 283. The easement of the public includes, in addition to the right to pass and repass, the right to do anything within the limit of the highway bounds reasonably necessary to adapt it to the changing needs of such a use. Any person who is upon land taken for a highway, whether or not he is upon the portion adapted for travel, for the purpose of making repairs or improvements under the authority of duly constituted highway officials is there in the exercise of a right incident to the public easement of passage, and is not a trespasser. Nothing that Peter was doing could in any way interfere with the right of the defendant to maintain its wires over the highway. Upon the facts of this case the trial court could properly reach no other conclusion than that he was rightfully on the land where he was killed.

The only case in our reports which suggests a contrary conclusion is *Valin* v. *Jewell,* 88 Conn. 151, 90 Atl. 36. In that case a tenant in a building brought an action against the owner, his landlord, to recover damages caused by a fall while he was attempting to remedy a slippery condition on a sidewalk in front of the premises, alleged to be due to the defective construction of the roof of the building; a demurrer to the complaint was sustained upon the ground that no facts were alleged sufficient to show that the defendant owed any duty to the plaintiff to take steps to safeguard him from injury; and we held the ruling to be correct, pointing out that the plaintiff was not a traveler on the highway nor was there anything in the relationship of landlord and tenant which would give rise to such a duty. It is sufficient for our present purpose to distinguish that case on the ground stated in *Higgins* v. *Connecticut Light & Power Co.,* 129 Conn. 606, 612, 30 Atl. (2d) 388. In that case certain employees of

the highway department sued to recover for injuries due to electric shock received from wires maintained by the defendant while they were trimming trees in the highway; we found error in a judgment for the defendant; and, citing *Valin* v. *Jewell,* supra, we said: "Obviously, the plaintiffs' claim for recovery was based upon their peculiar and particular relation to the defendant and not upon their rights as members of the general public."

The defendant in its brief contends that the jury could have reached no other conclusion from the evidence than that it was Peter's own act in pulling the steel as it was being moved which brought the cable into contact with the wire. That a person at the time he suffers an injury is engaged in an act which is wrongful as regards the party whom he seeks to hold liable for the injury does not necessarily bar recovery. *Black* v. *Hunt,* 96 Conn. 663, 666, 115 Atl. 429. "A trespasser is liable to an action for the injury which he does: but he does not forfeit his right of action for an injury sustained." *Barnes* v. *Ward,* 9 C. B. 392, 420, 137 Eng. Rep. R. 945; 1 Beven, Negligence (4th Ed.), p. 9; see *Birge* v. *Gardiner,* 19 Conn. 507, 512; *Shiembob* v. *Ringling,* 115 Conn. 62, 160 Atl. 429; *McPheters* v. *Loomis,* supra, 531. The defendant had a right to maintain its wires over the highway; Peter had a right to be where he was within the highway bounds and to be engaged in the work of construction. If the jury had found that the defendant should have anticipated the danger to men working in the construction of the bridge from the presence of its wires, the defendant could not avoid liability upon the ground that, as matter of law, it was under no duty to guard them against that danger. The case in this aspect is ruled by our decision in *Ruocco* v. *United Advertising Corporation,* 98 Conn. 241, 119 Atl. 48. In that case

the decedent, to recover for whose death the action was brought, was standing on a sidewalk; he reached over and touched a chain hanging inside the open door of a garage maintained by the defendant; and he received an electric shock which caused his death. The defendant demurred to the complaint, claiming that it failed to show the plaintiff to have been other than a trespasser; the demurrer was sustained by the trial court upon the ground that at the time of the injury some part of the decedent was upon the defendant's property and that it owed him no duty to keep its property in a safe condition. This ruling was held to be erroneous and we said (p. 245): "It is true that upon the allegations of the substituted complaint the intestate was as to some part of his person upon the property of the defendant at the time of the accident; but his right of action was not necessarily defeated thereby, for it is alleged that at the time of the injury he was in the lawful use of the highway, and from that standpoint the question is whether the defendant was under any obligation to maintain its premises in such a condition as not to endanger travelers in their lawful use of the highway." See also *Spagnolo* v. *Lanza,* 110 Conn. 178, 181, 147 Atl. 594. The trial court was in error in directing the verdict upon the ground that the defendant owed no duty to take any steps to safeguard Peter from danger from its wires because he was a trespasser, and in refusing to set aside the verdict so directed.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.