D. Spencer Berger et al. *v.* Town of Guilford

Maltbie, C. J., Brown, Jennings, Ells and Mellitz, Js.

Argued April 8—decided August 23, 1949.

*George C. Conway,* with whom was *Lewis R. White-head,* for the appellant (defendant).

*William L. Beers,* with whom, on the brief, was *J. J. Henry Muller, III,* for the appellees (plaintiffs).

MALTBIE, C. J. The question at issue in this action to settle title is whether the plaintiffs own a small

beach at Bloody Cove in the defendant town or it is owned by the town as a public beach. The action was originally brought by the plaintiff Berger; later George T. Sperry and Edith M. Gulliver were admitted as co-plaintiffs. Thereafter a substitute complaint was filed in two counts, the first of which set up the claim of the plaintiffs Berger and Gulliver and the second the claim of the plaintiff Sperry. After issue was joined the case was referred to a state referee, who held extensive hearings and made his report. To that report the defendant filed a remonstrance in five parts. The first part sought to have many paragraphs stricken from the report as not supported by the evidence; the second asked that the report be recommitted for the addition of certain facts; the third sought to have the same facts added to the report as admitted or undisputed; the fourth alleged that the report should not be accepted for certain reasons appearing on its face; and the fifth set out two rulings on evidence made by the referee which were claimed to be erroneous. The plaintiffs filed a single pleading in which they denied that any of the facts stated in the first part of the remonstrance were found without evidence and demurred to the other parts. The trial court sustained the demurrer, overruled the remonstrance and entered judgment in favor of the plaintiffs.

The pleading filed by the plaintiffs to the remonstrance is open to serious criticism. Our practice does not sanction the joining of an answer and a demurrer in a single pleading. The demurrer to the second part of the remonstrance, which sought the recommittal of the report, states in a single paragraph a number of grounds, some applicable to certain paragraphs and some to others; it was not within the statute which requires that all demurrers shall be special. General Statutes § 7814. The proper ground of demurrer to a

remonstrance seeking the recommittal of a report to have certain facts added is that they are clearly irrelevant or immaterial. See *Hoffman Wall Paper Co.* v. *Hartford,* 114 Conn. 531, 538, 159 A. 346. The demurrer to the third part of the remonstrance, which sought to have certain facts added, upon the ground that they were not admitted or undisputed, is not correct practice; *Hoffman Wall Paper Co.* v. *Hartford,* supra, 537; the proper pleading to raise that issue would be a denial that they were admitted or undisputed. It does not appear, however, that any objection to the manner in which it was sought to raise the issues was made, and, as the case has been fully argued before us, we shall regard the issues as properly presented. *Miller* v. *Cross,* 73 Conn. 538, 541, 48 A. 213; *Vincent* v. *Mutual Reserve Fund Life Assn.,* 77 Conn. 281, 284, 58 A. 963; Conn. App. Proc. § 28.

The record of testimony before the referee is very long and many exhibits were introduced. The argument before us has taken a wide scope and many incidental issues are presented. The brief of the defendant presents certain questions not raised by the remonstrance and these we disregard. It also refers to certain claimed admissions of plaintiffs' counsel as they appear in the transcript of evidence before the referee and in a brief filed by them before the trial court, but neither the transcript nor the brief is before us; if the defendant desired to present these matters, it should have taken steps to have the record rectified to include them. To discuss specifically all the claims properly before us would unduly prolong this opinion; we have considered them; but we shall refer only to those which are necessary to the decision of the case.

The primary issue arises out of the following situation as stated in the referee's report: The beach has an

area of about .15 of an acre; it is curved; at the westerly end it is about 10 feet wide and at the easterly about 40 feet; and it is about 320 feet long. The plaintiffs own land northerly of the beach and on that of Sperry stands a hotel. Their titles are derived from an allotment of lands made in 1728 by the proprietors in a tract of common land which bordered southerly on part of Bloody Cove and which was known as the Great Ox Pasture. The lots were set out to various people by acreage but without any statement of boundaries. In 1729, by a committee, the proprietors set up a "Terrier Record" of the several landholders of the town in order to settle titles and boundaries. Three of them owned land lying in whole or in part northerly of Bloody Cove, and from them the plaintiffs derive their titles. The records of the lands of each give a highway as the southerly boundary. The basic claim of the plaintiffs is that, despite this description of the boundary, ownership of the lands extended beyond it to the mean high-water line in the cove, while the town claims that such ownership stopped at the highway.

The report finds: As early as 1647 the town authority ordered that certain lands be fenced as an ox pasture and roads be laid out. While it does not appear what roads were actually laid out, they probably included two running inland from the shore, one easterly and one westerly of the cove, and, connecting them, the highway running along its edge. Within the memory of living men there was a time when there existed no definite limits to the last-mentioned road, travelers crossed the sandy beach where they chose, and it was not passable by heavy vehicles. The report then proceeds with a statement that from all the evidence the referee concluded that the whole beach, from the point where the road on the east met it to the point where it joined with the road on the west, was referred to as

the highway, and a boundary "southerly on the highway" was equivalent to a boundary on high-water mark, subject to the right of travel across the sand. The above findings of the referee as to the description of the road are plainly not conclusions from subordinate facts but primary facts based upon the evidence before him, and there is adequate support for them in the testimony of three witnesses. The remonstrance attacks the further statements of the court, not on the ground that they are conclusions of law, but because they are not properly drawn from subordinate facts.

In support of this contention the defendant advances several considerations. It says that there is no finding that the conditions described were present when the terrier record of the lands of the first proprietors was made, and this is true. There was testimony as to the building of a retaining wall on the beach side of the highway, but that dealt with a later time than that as of which the witnesses testified; there was evidence that the whole area had not been built up into such a summer community as now exists there; the inference that the conditions described by the witnesses had existed when the terrier record was made is implicit in the conclusion of the referee; and the trial court could not well have held that that inference was an unreasonable one. The defendant also claims that the referee failed to apply a presumption that highways are defined with reasonable certainty; and to support such a presumption it relies upon *New Britain Trust Co.* v. *Spencer,* 117 Conn. 402, 404, 168 A. 16. The opinion in that case states that highways must be defined with reasonable certainty so that both the public and adjoining landowners may know their rights. The presumption claimed by the defendant is but an aspect of the broader principle that public authorities will be presumed to have properly performed their duty. The

requirements in Guilford in 1647 as to the layout of roads do not appear, and that they included a definite establishment of boundaries would be a mere conjecture. It is interesting to note that in *Beardslee* v. *French,* 7 Conn. 125, a committee appointed by the proprietors in Stratford in 1735 to lay out highways in a certain division merely designated a certain line without breadth or limits. We cannot hold that there is any presumption that the road in question was in 1647 so laid out with definite bounds as to overcome a reasonable inference that it was, when the terrier record was made, in the condition found by the referee.

A highway is merely an easement for travel by the public with the incidental right in the party bound to maintain it to do anything within its limits necessary for adapting and maintaining it for that use. *Arborio* v. *Hartford Electric Light Co.,* 130 Conn. 592, 597, 36 A. 2d 384. The defendant further contends that the referee should have applied the rule that, where private owners own on both sides, each is presumed to own the fee to the middle of the highway. That is, however, merely a presumption; *Allen* v. *Mussen,* 129 Conn. 151, 155, 26 A. 2d 776; and the title to the fee of the entire highway may be proved to be in one person. *Watrous* v. *Southworth,* 5 Conn. 305, 310; *Seery* v. *Waterbury,* 82 Conn. 567, 570, 74 A. 908. If the ownership of the plaintiffs' predecessors in title ran to the high-water mark on the beach, the existence of the highway along the beach would not restrict their title to the fee. The fact that the state owns the land below high-water mark would not avail the defendant, because the state would have no claim to the fee above that mark, whether or not there was a highway over it. Nor are we satisfied that the findings that the whole beach was referred to as a highway and that a boundary southerly on the highway was equivalent to one

on the high-water mark can properly be regarded as mere conclusions from the other facts found. There was evidence before the referee from which he could have concluded that, even within the memory of living men, people used the beaches along the shore much as they chose, and that only in comparatively recent times has private ownership of them become of importance; and he might have inferred that it would be improbable that the proprietors in 1729 would have intended to leave in common ownership this small stretch of beach when allotting the lands in the Great Ox Pasture. We cannot hold that the trial court could not properly sustain the findings of the referee that the lands originally allotted were bounded southerly not on the road but by the high-water mark at the cove and so included the beach in question.

As far as concerns the plaintiff Berger, we do not understand the defendant to claim that he is not the owner of land lying northerly of the beach under a title derived from one of the men to whom an original allotment of land was made, and, unless it is because of certain matters hereinafter discussed, he is the owner of at least a part of the beach. The referee found that the plaintiff Sperry now owns a tract of land abutting the beach which is identified by reference to a map in evidence; it is necessarily implied in his subsequent finding as to the boundary between the lands of Berger and Sperry that the latter also owns a passway twenty feet wide, granted by Berger's predecessor in title to William S. Barker; and it reasonably followed that the line between the lands of Berger and Sperry, if projected, would cross the beach. The defendant does not attack the finding that Sperry had title to the tract, but it does claim that the findings in regard to the location of the tract and boundary constitute a construction of the deeds through which Sperry's title is

derived. The location of the lands and the boundaries between them was, however, a question of fact within the proper function of the referee to determine. *Merwin* v. *Morris,* 71 Conn. 555, 569, 42 A. 855; *Smith* v. *Ford,* 82 Conn. 653, 658, 74 A. 910.

The referee found that from time immemorial the public in general have resorted to the beach for bathing and to take sand and seaweed, sometimes with and sometimes without permission, that for some years past the town has taken sand from the beach for construction purposes without permission from Berger's predecessors in title, the Newhalls; and that for many years past the town authorities have cleaned the beach annually, removing accumulated debris washed up by the sea. The only way in which, so far as anything in the record suggests, the plaintiffs or their predecessors in title could have relinquished to the public their title to the beach would be by dedication; one necessary element of dedication is an intent on the part of the owner to surrender his property to the public; the question whether there was such an intent in this case was one of fact; *LaChappelle* v. *Jewett City,* 121 Conn. 381, 386, 185 A. 175; and the referee has not found, nor does the remonstrance claim that he should have found, that there was a dedication. The statement of one of the Newhalls, predecessors in title of the plaintiff Berger, that, while she believed she and her sister owned the beach, they would not fight an effort of the town to take it falls far short of evidencing an intent voluntarily to dedicate the beach to public use. As has already been noted, there was evidence before the referee that until comparatively recent times there was great freedom in the use of beaches by people generally; that the Newhalls had objected to the use of the beach by others; that the plaintiff Sperry had addressed to the men taking sand for the town a claim

that they should desist, and that people have sought from him permission to use the beach and he has granted it. So far as using it without permission was concerned, it can reasonably be attributed to mere acquiescence of the owners rather than to a recognition of the right to such use. The defendant sought to have added to the findings a statement that the reputation among old men who knew the beach was that it was a town beach. Such a reputation would not create a right in the public to use it; but, that aside, while a number of witnesses testified in general to this effect, there was testimony to the contrary, and also that it was called the "hotel beach." It cannot be regarded as an undisputed fact that there was such a general reputation in the community as the defendant contends. The fact that reference was made to the beach as public in a local newspaper some eight years before the hearing could have had no appreciable weight in determining the issues in the case. The title of the plaintiffs would draw to itself a right of possession, in the absence of actual possession by the public or the town; *Connecticut Light & Power Co.* v. *Fleetwood,* 124 Conn. 386, 390, 200 A. 334; and there are no findings of the referee, and in fact no evidence which would afford a basis for a finding, that the public or the town had such an exclusive possession of the beach as would constitute an ouster of the plaintiffs or their predecessors in title. *Smith* v. *Ford,* 82 Conn. 653, 659, 74 A. 910; *Byard* v. *Hoelscher,* 112 Conn. 5, 10, 151 A. 351.

The referee has found that the beach between the present retaining wall and high-water mark has been abandoned for use for highway purposes. The inclusion of a part of the beach within the limits of the highway would give the town rights in it, though it was not used for travel, which would constitute an interest in the beach; *Arborio* v. *Hartford Electric Light*

*Co.*, 130 Conn. 592, 597, 36 A. 2d 384; and a determination of whether the town had such an interest is within the scope of the complaint and issues on trial. The record furnishes no support for the defendant's contention that the plaintiffs made no claim that any part of the beach had been abandoned as a highway. While the defendant attacks the finding as not supported by the evidence, the trial court could properly overrule that claim. The construction of the retaining wall about 1930, its subsequent continuance, the testimony of a first selectman that one of its purposes was to preserve the beach, and the basic claim of the defendant in this action, not that it has any rights in the beach for highway purposes but that it is a public beach, with other incidental evidence, afford sufficient support for the referee's finding of abandonment. *New London* v. *Pequot Point Beach Co.*, 112 Conn. 340, 347, 152 A. 136.

While we have not discussed specifically the part of the remonstrance which sought to have the report recommitted for the finding of certain facts, such material claims of fact as are made have for the most part been discussed. A report should not be recommitted unless the court is satisfied that such a course is necessary to a just determination of the case. Practice Book § 173 (b). The trial court concluded that a recommittal would serve no purpose, and in that conclusion we concur.

The only issue raised in the part of the remonstrance claiming errors apparent on the face of the report which has not been at least inferentially discussed is that it does not appear on the face of the report that the referee before hearing the case was duly sworn. A state referee is an officer of the state and must take an oath before entering upon the performance of his duties. Conn. Const. Art. 10 § 1. Unlike a committee

appointed to hear a particular case, the oath which a state referee takes as a public officer covers the hearing and disposition of all matters referred to him. Obviously his report in any particular case need not state that he was duly sworn to hear it. In any event, the defendant does not question that the referee was in fact a retired judge of the Superior Court and so a state referee; General Statutes § 8177; and even though he had not taken an oath of office he would be a de facto public officer, the validity of whose acts are not open to challenge for that reason in a remonstrance to his report. *State ex. rel. Comstock* v. *Hempstead,* 83 Conn. 554, 557, 78 A. 442; *State ex rel. Eberle* v. *Clark,* 87 Conn. 537, 540, 89 A. 172.

The defendant claims that the referee made two erroneous rulings on evidence. It called one of the assessors of the town and asked whether any portion of the beach had ever been assessed under any of the plaintiffs' names. The referee excluded the question. The defendant relies on *Kenneson* v. *Bridgeport,* 130 Conn. 298, 33 A. 2d 313, to support its claim. That was an action to recover for injuries caused by a defect in a way which the plaintiff claimed was a highway by dedication; the defendant city disputed this contention; in discussing the charge to the jury, we said (p. 303) that the failure of the city to tax the land included in the way is "some evidence of recognition by the city that no individual had a beneficial ownership of the land." In that case the failure to assess the land was in the nature of an admission. In this case the failure to assess the beach against the plaintiffs would go no further than to be "some evidence" that the town claimed it. The referee found that to be so; and the exclusion of the evidence would in any event be harmless. The defendant put in evidence a tax list signed by Berger which described the

property owned by him as certain numbered lots appearing on a map on file in the town clerk's office, and the defendant claimed that the map indicated that Berger's land did not include any part of the beach. The plaintiffs then called Berger and over objection he was permitted to state that the tax list had been prepared by his secretary and he had signed it without reading it. Where evidence is introduced showing an apparent admission of a party out of court, he is entitled to explain the circumstances so that the trier can properly evaluate it. 1 Jones, Evidence, § 296; 4 Wigmore, Evidence (3d Ed.) p. 23. The principle is the same as that which permits a witness to explain the testimony he has given in court. *Bredow* v. *Woll*, 111 Conn. 261, 264, 149 A. 772. The evidence was properly admitted.

There is no error.

In this opinion the other judges concurred.